[Cite as *In re Disqualification of Spon,* 134 Ohio St.3d 1254, 2012-Ohio-6345.]

IN RE DISQUALIFICATION OF SPON.

IN RE O.B.

[Cite as *In re Disqualification of Spon,* 134 Ohio St.3d 1254, 2012-Ohio-6345.]

*Judges—Affidavits of disqualification—R.C. 2701.03—Request for removal denied—No basis established warranting disqualification.*

(No. 12-AP-014—Decided April 12, 2012.)

ON AFFIDAVIT OF DISQUALIFICATION in Richland County Court of Common Pleas, Juvenile Division, Case No. 2011-DEP-00014.

_____

**O'CONNOR, C.J.**

{¶ 1} R. Scot Harvey and Edith A. Gilliland, counsel for Richland County Children Services Board ("RCCSB"), have filed a joint affidavit with the clerk of this court under R.C. 2701.03 seeking to disqualify Judge Ron Spon from acting on any further proceedings in the above-captioned case. On February 27, 2012, Harvey and Gilliland filed a joint supplemental affidavit to disqualify Judge Spon.

{¶ 2} Affiants allege that Judge Spon is biased and prejudiced against RCCSB, Gilliland, and RCCSB's executive director, Randy Parker. The underlying case involves both a dependency action involving a minor child and a contempt action against RCCSB. According to affiants, the totality of Judge Spon's actions and comments demonstratea a level of bias, prejudice, impropriety, or the appearance of impropriety such that he cannot preside fairly and impartially over any part of the underlying case.

{¶ 3} Judge Spon has responded in writing to the concerns raised in the affidavits, offering a detailed account of his handling of the underlying case. He contends that RCCSB has not demonstrated any bias, prejudice, or disqualifying interest on his part. The judge maintains that he has honored his oath and discharged his duties with fairness and impartiality and according to the

applicable law and that he will continue to do so if permitted to remain on the case.

{¶ 4} For the following reasons, no basis has been established for ordering the disqualification of Judge Spon.

## 1. R.C. 2701.03 Procedural Matters

{¶ 5} Affiants Harvey and Gilliland seek to disqualify Judge Spon from the underlying dependency case and the underlying contempt proceedings due to his alleged bias and prejudice against RCCSB, Gilliland, and Executive Director Parker. RCCSB is a party to both the dependency action and the contempt proceedings pending before Judge Spon. Parker, however, does not appear to be a party to the dependency case or the contempt proceedings. Likewise, the record indicates that attorney Gilliland is not a party to the contempt proceedings. It also appears that Gilliland represents RCCSB in the dependency case but not in the contempt proceedings.

{¶ 6} R.C. 2701.03(A) requires that an affidavit of disqualification be filed by a "party to the proceeding or the party's counsel." Because Parker and Gilliland are not parties or counsel to the contempt proceedings, the judge's alleged bias or prejudice against them will be considered only insofar as it can be imputed to their being associated with RCCSB, a party to the contempt proceedings. The judge's alleged bias and prejudice against Parker will be similarly considered as it relates to the dependency case. *See In re Disqualification of Haas*, 74 Ohio St.3d 1217, 657 N.E.2d 1331 (1990) (dismissing affidavit of disqualification because affiants were not parties to the underlying proceedings).

## 2. The Contempt Proceedings

*Facts*

{¶ 7} On August 22, 2011, an incident occurred at the offices of RCCSB that involved the father of the dependent child at issue in the underlying case. On

2

August 23, upon the guardian ad litem's request, a subpoena was served on RCCSB to turn over a video recording of the incident.

{¶ 8} On September 8, attorney Gilliland filed a motion to quash the subpoena on behalf of RCCSB. On the same day, a juvenile court magistrate denied the motion to quash after hearing the parties' arguments. On October 24, the magistrate issued a written order on the motion to quash and ordered RCCSB to allow the guardian ad litem to view the video. RCCSB failed to comply with the magistrate's October 24 order, so the magistrate issued another order—on November 28—for RCCSB to turn over the video. During a hearing held on November 30, Gilliland informed the magistrate that her client, RCCSB, was not going to release the video. Specifically, Gilliland stated that she had informed Parker (RCCSB's executive director) of the court's orders to turn over the video. According to Gilliland, Parker "reports ultimately to the Board of Directors [of RCCSB]," and he told her that the video was not going to be released.

{¶ 9} On December 1, the magistrate issued an order requiring RCCSB to turn over the video by December 5. On December 5, RCCSB notified the magistrate that the video no longer existed. According to the affidavit of disqualification, sometime between August 23 (the day the subpoena to turn over the video was served on RCCSB) and October 24, the video recording had been inadvertently recorded over as part of the video-recording system's routine operation. Affiants further allege that, although the subpoenaed video was recorded over sometime between August 23 and October 24, RCCSB did not discover this fact until December 5.

{¶ 10} On December 13, the guardian ad litem filed a motion for RCCSB to show cause why it should not be held in contempt for "willfully" destroying the video recording. Judge Spon then ordered RCCSB and Executive Director Parker to appear in court and show cause on the contempt charge. Judge Spon

subsequently vacated the order as to Parker, finding that the contempt action was not directed against Parker personally or as RCCSB's executive director.

{¶ 11} Thereafter, the parties engaged in settlement discussions regarding the contempt action. Judge Spon actively participated in the settlement process, including the drafting of a (1) "Proposed Contempt Action Consent Decree," (2) proposed "Agreed Stipulations," and (3) proposed "Contempt Hearing Submitted on Stipulations."

{¶ 12} On January 24, 2012, Judge Spon conducted a status conference. During the conference, according to affiants, the judge stated that RCCSB would have the burden of proof at the contempt hearing. RCCSB objected, arguing that since it faced criminal contempt, the movant (the guardian ad litem) had the burden of proof beyond a reasonable doubt. According to affiants, Judge Spon overruled their objection. The judge also denied a motion to quash additional subpoenas that had been served on Parker and Gilliland at the guardian ad litem's request.

{¶ 13} On January 30, Judge Spon issued a "Supplemental/Clarifying Order to Show Cause." According to this order, it was "unclear" whether the guardian ad litem's motion for contempt was for indirect civil contempt, indirect criminal contempt, or both. The order's stated purpose was to "clarify the true nature and scope of the contempt action" against RCCSB to "assure that the requirements of due process of law are fulfilled." Accordingly, Judge Spon's order informed RCCSB that it faced both civil and criminal contempt charges.

{¶ 14} On the same day, Judge Spon rejected a proposed "Admission of Contempt" that was submitted by five RCCSB members. On January 31, Judge Spon stayed the contempt proceedings so that RCCSB could pursue an appeal to the court of appeals. RCCSB had earlier appealed Judge Spon's decision shifting the burden of proof and denying the motion to quash the subpoenas served on Parker and Gilliland. It appears that RCCSB's appeal is still pending.

**{¶ 15}** Affiants raise several allegations regarding Judge Spon's handling of the contempt proceedings. Affiants' primary claims will be addressed in turn.

*Judge's Involvement in Settlement Negotiations*

**{¶ 16}** Affiants first complain that Judge Spon became actively involved in settlement discussions on the contempt charges. According to affiants, no one had requested that Judge Spon "assist in forging a resolution of the contempt action, and no one requested that Judge Spon come up" with a proposed consent decree and stipulations.

**{¶ 17}** Judge Spon disputes affiants' claim. According to the judge, he took on the task of actively facilitating a settlement of the contempt dispute because (1) it was the express desire of all parties (especially RCCSB) to try to reach an amicable settlement and (2) all parties "expressly and tacitly" consented to settlement facilitation by the trial court. Moreover, the judge notes that no party ever objected to his involvement in the settlement process.

**{¶ 18}** Generally, a judge will not be disqualified solely because the judge participated in discussions regarding a potential plea bargain or settlement. *In re Disqualification of Sheward*, 100 Ohio St.3d 1221, 2002-Ohio-7473, 798 N.E.2d 8, ¶ 5. Affiants apparently take issue with the level of Judge Spon's involvement in the settlement process, including his actions in preparing a proposed consent decree and stipulations of facts. But the mere fact that the judge made certain proposals as a means of facilitating a settlement does not establish the existence of bias or prejudice. *See In re Disqualification of Solovan*, 101 Ohio St.3d 1222, 2003-Ohio-7353, 803 N.E.2d 821, ¶ 4 (disqualification of judge not warranted for his having outlined several factors that parties should consider before determining whether to settle case prior to trial). And while affiants claim that no one had requested Judge Spon's assistance in resolving the contempt action, nothing in this record suggests that affiants ever objected to the judge's participation in the settlement process. An attorney cannot acquiesce in the trial judge's participation

in settlement negotiations and then later try to have the judge disqualified because the judge was too involved in negotiations or counsel did not like the judge's proposed settlement. *See In re Disqualification of Nadel*, 74 Ohio St.3d 1214, 657 N.E.2d 1329 (1989) (a party cannot acquiesce in the judge's participation in plea negotiations and, if no settlement is reached, seek to disqualify the judge based on what the judge learned during negotiations).

{¶ 19} Nothing in the case suggests that the judge's active involvement in settlement negotiations was improper or that he placed undue pressure on RCCSB to settle the matter on unfavorable terms. Indeed, attorney Harvey concedes that RCCSB was not asking that Judge Spon be disqualified because he had "engaged in coercive behavior" during settlement discussions. And the record reflects that RCCSB was free to reject any of the proposals offered by Judge Spon and defend against the contempt charges during trial.

{¶ 20} Second, affiants allege that the judge's comments, proposals, and other actions during the settlement discussions reflect prejudgment on the contempt matter. Affiants refer specifically to the following alleged facts: Judge Spon (1) commented about the possibility of future contempt charges against Parker and attorney Gilliland, who have not been charged with contempt, (2) proposed stipulations that, if agreed to by RCCSB, would constitute a waiver of certain legal defenses to the contempt charge, (3) refused to accept RCCSB's "Admission of Contempt," because it did not include a provision requiring RCCSB to plead guilty to criminal contempt, and (4) was adamant that Director Parker or whoever else was responsible for the contempt appear in court and apologize.

{¶ 21} The types of concerns raised by affiants here have been rejected in prior cases. A judge will rarely hear preliminary aspects of a case without forming conditional opinions about the facts or the law. Such conditional opinions often assist the parties and their counsel in identifying and narrowing the

issues in controversy and facilitate the settlement of cases before trial. The formation of these conditional opinions, however, does not counter the presumption of the judge's ability to render a fair decision based upon the evidence later presented at trial. *In re Disqualification of Horvath*, 105 Ohio St.3d 1247, 2004-Ohio-7356, 826 N.E.2d 305, ¶ 8, citing *In re Disqualification of Brown*, 74 Ohio St.3d 1250, 657 N.E.2d 1353 (1993).

**{¶ 22}** Certainly, the judge's rejection of RCCSB's "Admission of Contempt" is not grounds for disqualification. *See In re Disqualification of Mitrovich*, 74 Ohio St.3d 1219, 657 N.E.2d 1333 (1990) (judge's rejection of proposed plea bargain does not suggest bias or prejudgment). As to Judge Spon's comments during settlement talks regarding future contempt charges against Parker and Gilliland, it is not clear how this demonstrates prejudgment. It is proper for a judge during settlement negotiations to make clear what terms would be acceptable or unacceptable to the court, to require certain concessions before approval of an agreement, and even to warn of potential adverse consequences should an agreement not be reached. *See In re Disqualification of Nadel*, 74 Ohio St.3d 1214, 657 N.E.2d 1329 (judge indicated during plea negotiations that he would not consider a probationary sentence for defendant if he was convicted at trial). The fact that Parker and Gilliland have not yet been charged with contempt does not preclude such charges at a later date, should evidence come to light implicating them in the refusal to comply with the court's orders and/or the alleged destruction of evidence. The judge's comments appear to be nothing more than an offer for Parker and Gilliland to avoid any future contempt charges as part an agreement with RCCSB to plead to the contempt charges.

**{¶ 23}** Finally, affiants contend that during a telephone settlement conference, Judge Spon commented that "there is also an issue of [attorney Gilliland's] violating certain ethical rules." According to affiants, this was an issue that no one had previously raised and had never been a part of the contempt

proceedings. Affiants further allege that the judge raised the issue a second time later in the telephone conference.

{¶ 24} In affidavit-of-disqualification proceedings, the burden falls on the affiant to submit sufficient argument and evidence to support the disqualification request. *See* R.C. 2701.03(B)(1) (requiring affiant to include specific allegations of bias, prejudice, or disqualifying interest and the facts to support those allegations). Affiants' claim is rejected because they do not allege or otherwise explain how these remarks demonstrate bias, prejudice, or a disqualifying interest on Judge Spon's part.

{¶ 25} In Harvey's March 15 rebuttal letter, he asserts that the judge's explanation in response to the affidavit of disqualification "leaves no doubt he threatened to file ethical charges against Ms. Gilliland if the contempt action was not settled to his liking." Harvey cannot, however, raise new allegations against a judge simply by filing a letter with the court. R.C. 2701.03 requires that a party or counsel seeking to disqualify a judge in a pending action must file an *affidavit* with the clerk of the Supreme Court. By definition, an affidavit must be confirmed by oath or affirmation of the party making it and the oath or affirmation must be taken before a person having authority to administer the oath or affirmation. *In re Disqualification of Pokorny*, 74 Ohio St.3d 1238, 657 N.E.2d 1345 (1992). *See also* R.C. 2701.03(B)(2) (requiring that the affidavit contain the "jurat of a notary public or other person authorized to administer oaths or affirmations"). Harvey's failure to confirm the statement in his letter "by oath or affirmation" violates R.C. 2701.03. Accordingly, his allegation against Judge Spon is a "nullity" and has "no effect on the proceedings before" the trial court. *Pokorny* at 1238.

*Judge's Adverse Rulings*

{¶ 26} Affiants also complain that the judge vacillated in categorizing the contempt charges against RCCSB as civil or criminal. According to affiants,

Judge Spon first made it clear that RCCSB faced criminal contempt charges, but then later determined that the proceedings could be characterized as civil in nature. The judge, affiants charge, did this to prevent RCCSB from invoking certain constitutional rights that would be available if RCCSB were facing criminal contempt charges. Affiants also assert that this allowed Judge Spon to improperly shift the burden of proof to RCCSB at the contempt hearing. Affiants complain that when attorney Harvey objected to the ruling that the burden of proof rested on RCCSB, Judge Spon overruled the objection even though in a criminal proceeding, the movant has the burden of proof beyond a reasonable doubt. Affiants also fault Judge Spon for issuing a supplemental show-cause order on the contempt charge, instead of relying on the guardian ad litem's motion to show cause. According to affiants, the judge did this to prevent RCCSB from having a jury trial on the contempt charge.

{¶ 27} For his part, Judge Spon states that upon review of the contempt pleadings, it appeared to him that the contempt action had elements of civil and criminal contempt. The judge maintains that he issued the supplemental show-cause order to dispel any confusion and to ensure that RCCSB had proper notice of the exact nature and scope of the contempt proceedings. Judge Spon avers that the supplemental order was issued for due process purposes only, and he expressly denies that he was trying to prevent RCCSB from having a jury trial.

{¶ 28} It is well settled that an affidavit of disqualification "is not a vehicle to contest matters of substantive or procedural law." *In re Disqualification of Solovan*, 100 Ohio St.3d 1214, 2003-Ohio-5484, 798 N.E.2d 3, ¶ 4. *See also In re Disqualification of Floyd*, 101 Ohio St.3d 1217, 2003-Ohio-7351, 803 N.E.2d 818, ¶ 4 (disagreement or dissatisfaction with a court's legal rulings, even if those rulings may be erroneous, is not grounds for disqualification). Reviewing alleged legal errors is not the chief justice's role in deciding an affidavit of disqualification. *In re Disqualification of Russo*, 110

Ohio St.3d 1208, 2005-Ohio-7146, 850 N.E.2d 713, ¶ 6. Affiants have other legal remedies available to challenge these decisions. And, in fact, affiants have filed an appeal challenging the judge's decision to shift the burden of proof.

{¶ 29} Moreover, affiants have raised serious claims; they claim that the judge acted solely to preclude RCCSB from invoking its constitutional rights and from having a jury trial. Yet affiants offer nothing more than their own subjective belief to support these allegations. Subjective belief of bias alone is insufficient to support these claims. *In re Disqualification of Lewis*, 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 7.

*Judge's Exclusion of Parker and Gilliland from Hearings*

{¶ 30} Affiants assert that Judge Spon prevented Parker and Gilliland from attending hearings in the contempt proceedings. No bias or prejudice is evident here. The record in this case reflects that Parker and Gilliland are not parties to the contempt proceedings. The record further indicates that attorney Harvey—not Gilliland—represents RCCSB in the contempt proceedings.

*Judge's Dissatisfaction with RCCSB*

{¶ 31} Affiants allege that Judge Spon has long been dissatisfied with how RCCSB is run and has attempted to change it to his liking. According to affiants, Judge Spon has admitted (1) that he had contacted one of the Richland County commissioners (the body that makes board-of-director appointments to RCCSB) to express his concerns about RCCSB and to request an opportunity to provide names of potential candidates to the board of directors, (2) that his purpose in contacting the commissioner was to attempt to initiate reforms in RCCSB's policies and practices through the appointment of new and/or additional board members, and (3) that he had chastised RCCSB and made critical comments on the record in other cases about the services provided by RCCSB.

{¶ 32} Judge Spon does not deny the above allegations. He does, however, maintain that his comments and actions do not reflect bias or prejudice

10

against RCCSB. The judge states that he has seen the quality of services provided by RCCSB to his court "steadily decline" over several years. According to the judge, because the services provided by RCCSB affect his court's ability to serve the best interests of struggling children and families, he has made numerous attempts to have RCCSB and Director Parker address his concerns, only to be ignored. As to his contact with the county commissioner, he avers that his sole purpose was to provide "objective information bearing upon the current issues affecting [his] Court's ability to serve the best interests of children, and to support [the] local bar association's attempts to effectuate RCCSB policy and practice reforms through the appointment of new and/or additional board members to RCCSB's board of directors." Judge Spon also admits that in certain cases he has "verbally expressed [his] concerns regarding RCCSB's services provided to children and families appearing in [his] Court." He explains that he has "chastised and otherwise redirected [RCCSB] on occasion * * * in a specific case, when [he] felt that RCCSB was not doing the job it should be doing pursuant to Ohio law." The judge makes "no apologies" in this regard and asserts that he (as a juvenile court judge) has statutory and inherent authority to properly address such issues.

**{¶ 33}** After careful review of these allegations and admissions, this claim is rejected for the following reasons.

**{¶ 34}** First, it is well settled that an affidavit of disqualification must be filed as soon as possible after the affiant becomes aware of circumstances that support disqualification and that failure to do so may result in waiver of the objection. *In re Disqualification of Pepple*, 47 Ohio St.3d 606, 607, 546 N.E.2d 1298 (1989). RCCSB has been aware since November 7, 2011, that Judge Spon contacted a Richland County commissioner to discuss appointments to the board. On January 3, 2012, RCCSB, through attorney Gilliland, filed two affidavits of disqualification against Judge Spon raising this exact claim. *See* affidavit of

disqualification case Nos. 12-AP-001 and 12-AP-002. These earlier affidavits also alleged that Judge Spon had made comments critical of RCCSB on the record in other cases. On January 20, attorney Gilliland withdrew the earlier affidavits of disqualification, and this court dismissed the cases as moot on January 24. Two weeks later, on February 7, affiants filed the instant affidavit, reasserting these same claims. The filing of the instant affidavit also followed a nearly two-month delay from the date that the underlying contempt charges were filed against RCCSB, December 13, 2011. As nothing in the record justifies the delay in filing the affidavit of disqualification, this constitutes an independent ground for denying these particular allegations. *See In re Disqualification of Glickman*, 100 Ohio St.3d 1217, 2002-Ohio-7471, 798 N.E.2d 5, ¶ 7-8.

{¶ 35} Second, even if affiants had not waived their objections, the allegations against Judge Spon are without merit. Affiants automatically assume that Judge Spon's critical comments about RCCSB compel his disqualification. But a judge is not prohibited from voicing concerns about the quality of work provided by public employees who interact with the judge's court. Judges rightly expect that lawyers and public employees who interact with the court will behave appropriately and do their work diligently. And when the actions or conduct of a lawyer or party—inside or outside the courtroom—compromise the court's ability to perform its duties, judges are allowed to express their dissatisfaction. *See In re Disqualification of Corrigan*, 105 Ohio St.3d 1243, 2004-Ohio-7354, 826 N.E.2d 302, ¶ 10 (judges are entitled to express their dissatisfaction with an attorney's dilatory tactics inside and outside the courtroom); *see also In re Disqualification of Sutula*, 105 Ohio St.3d 1237, 2004-Ohio-7351, 826 N.E.2d 297, ¶ 6 ("A judge's use of forceful language inside or outside the courtroom does not prevent the judge from serving fairly and impartially").

{¶ 36} The judge's dissatisfaction, however, "can and should be expressed in a way that promotes public confidence in the integrity, dignity, and impartiality

of the judiciary." *Corrigan* at ¶ 10. *See also* Jud.Cond.R. 1.2. Fatal to affiants' claim here is their failure to include transcripts of those proceedings where Judge Spon made the complained-of comments. *See In re Disqualification of Corrigan*, 77 Ohio St.3d 1235, 674 N.E.2d 350 (1996) (affiants submitted evidentiary materials showing disqualification of all county judges was warranted). Thus, there is no way to determine whether the judge's remarks reflect bias or prejudice or the appearance thereof against RCCSB.

{¶ 37} As to Judge Spon's contact with a county commissioner regarding board appointments to RCCSB, this aspect of the case is troubling. Judge Spon may have a unique perspective on RCCSB's operation and the need for change. And while it was not improper for him to share his concerns with the county bar association and others, the better course would have been for the judge to let the county bar take the lead to effectuate any needed reforms to RCCSB. Likewise, had the county commissioners approached the judge for his views about new board members, he could have given his opinion without raising questions about his role as a fair and impartial adjudicator. Indeed, judges are often called upon to lend their expertise and opinions on matters affecting their courts. Judge Spon, however, should not have been the one to initiate contact with the county commissioner and lobby to make changes to the board.

{¶ 38} If RCCSB had timely asserted this claim, then the judge's contact with the county commissioner may well have created an appearance of impropriety as to the contempt proceedings. But, as noted, RCCSB has been aware since November 7, 2011, that the judge contacted the county commissioner. And attorney Gilliland raised this exact issue in two affidavit-of-disqualification cases early this year, only to withdraw her affidavits before this court could consider her claims. The matter was raised again in this case, nearly two months after contempt charges were filed against RCCSB. If RCCSB believed that Judge Spon's contact with the county commissioner demonstrated bias or prejudice, it

should have raised this issue in a more timely fashion. RCCSB's delay suggests that it believed that Judge Spon could remain impartial, despite his contact with the county commissioner. In short, affiants' decision to defer raising this issue has undercut their claim that the judge's contact with the county commissioner is grounds for his disqualification.

### 3. The Dependency Action

*Facts*

{¶ 39} Throughout the child-dependency proceedings, RCCSB's position has been that the father's visitation with his child should take place at RCCSB's facility. The juvenile court has disagreed with RCCSB's position, believing that it was in the child's best interest for visitation to occur in public under the supervision of Parent Aid, an organization that is not affiliated with RCCSB.

{¶ 40} On January 19, 2012, the magistrate issued a decision that allowed the father to continue to have public visits with the minor child outside of RCCSB. The decision further provided that the "supervision shall include a member of Parent Aid staff, and that RCCSB, the Attorney for child, and the [guardian ad litem] may attend each visit."

{¶ 41} On January 24, the magistrate issued an order, again providing that visitation occur in a public location outside the RCCSB facility. This order differed from the January 19 decision in that the order required that visitation be supervised at all times by Parent Aid "and/or" RCCSB.

{¶ 42} On February 1, during one of the public visits, the father absconded with the minor child. The child was apparently returned to RCCSB a short time later. On February 3, Judge Spon issued an order scheduling a "review" hearing to take place on February 7. The judge's order also required RCCSB to secure the presence of any employees who had responsibility for monitoring or supervising the February 1 visit or ensuring that the visitation supervision was conducted in accordance with prior court orders.

{¶ 43} The affidavit of disqualification was filed with this court on February 7. The gravamen of the affidavit as it relates to the dependency proceedings is that Judge Spon has predetermined that RCCSB was at fault for the father's abducting the child. Affiants believe that the blame for this incident should lie with Parent Aid, not RCCSB, because the court had appointed Parent Aid to supervise this visit.

{¶ 44} Despite the filing of the affidavit, the February 7 review hearing went forward.[1] On February 13, Judge Spon issued an order adopting the January 19 magistrate's decision, except for the provisions dealing with visitation, which the judge rejected. Judge Spon's February 13 order also (1) "reaffirm[ed]" the January 24 magistrate's order, subject to a previously ordered temporary suspension of all visits, and (2) required that RCCSB monitor or supervise all future visits by sight and sound, with the assistance of a volunteer from Parent Aid.

{¶ 45} On February 27, affiants filed a supplemental affidavit of disqualification. In this filing, the affiants' primary claim is that Judge Spon wrongly found that the January 24 magistrate order took precedence over the January 19 magistrate decision. Affiants also raise several claims regarding the February 7 review hearing.

### Judge's February 3 Order

{¶ 46} Affiants first allege that the language in Judge Spon's February 3 order indicates that he may have already predetermined that RCCSB was at fault for the father's abducting the child. Affiants quote certain language from the judge's order, but they do not explain specifically how this language demonstrates prejudgment against RCCSB. The order, construed in its proper context, merely acknowledges the court's prior suspension of the father's visitation with the child

---

1. The parties agree that the February 7 hearing was not subject to the automatic-stay provision in R.C. 2701.03(D)(1).

and orders the parties—including certain RCCSB employees—to attend a review hearing concerning the February 1 incident. According to the judge, the breach in supervision exposed the child to personal risk and he required the RCCSB employees who were potential witnesses to the incident to attend the review hearing merely to determine what went wrong at the February 1 visitation. In the absence of any argument or evidence from affiants on this matter, no basis exists for finding that Judge Spon has prejudged this matter.

*February 7 Review Hearing*

**{¶ 47}** Affiants allege that the judge's actions during the February 7 review hearing demonstrate bias, prejudice, or an appearance of impropriety. Affiants first contend that Judge Spon used the February 7 hearing to publicly place the blame on RCCSB for the father's abduction of the child. Affiants claim that during the hearing the judge "excoriated" RCCSB for its alleged deficient training of its employees and found, without citing any evidence, that the deficient training contributed to the abduction.

**{¶ 48}** Affiants have not met their burden under R.C. 2701.03 of submitting sufficient argument and evidence that would support this allegation. *See* R.C. 2701.03(B)(1) (requiring affiant to include specific allegations of bias, prejudice, or disqualifying interest and the facts to support those allegations). Affiants have offered no evidence—such as a transcript of the February 7 review hearing—that would support their claims here. In contrast, Judge Spon submitted a partial transcript of that hearing. Nothing in this partial transcript demonstrates that Judge Spon "excoriated" RCCSB or placed undue blame on the agency for the child's abduction. Vague and unsubstantiated allegations, such as those alleged here, are insufficient to establish bias or prejudice. *See In re Disqualification of Walker*, 36 Ohio St.3d 606, 522 N.E.2d 460 (1988).

**{¶ 49}** Second, affiants claim that during the February 7 hearing, Judge Spon refused to allow RCCSB to argue that the court's prior orders placed

primary responsibility for supervising the visits on Parent Aid. RCCSB did argue during the February 7 hearing that the magistrate's January 19 decision is dispositive to its claim that RCCSB was not to blame for the child's abduction. In RCCSB's view, that order placed primary responsibility for supervising the visit with Parent Aid. Judge Spon rejected RCCSB's argument, finding instead that the magistrate's January 24 order set forth the parameters for the February 1 visitation. On February 13, Judge Spon issued a written order, in effect, affirming that the January 24 order was controlling. Affiants also challenge this order in their supplemental affidavit of disqualification.

{¶ 50} Contrary to affiants' contention, an affidavit of disqualification is not the mechanism for determining whether Judge Spon's ruling was legally correct. *In re Disqualification of Griffin*, 101 Ohio St.3d 1219, 2003-Ohio-7356, 803 N.E.2d 820, ¶ 8. Trial judges are entitled to exercise their discretion in ruling on many matters, and it is not the chief justice's role in deciding an affidavit of disqualification to second-guess each ruling. The remedy for these and other legal claims, if any, lies on appeal, not through the filing of an affidavit of disqualification. *In re Disqualification of Russo*, 110 Ohio St.3d 1208, 2005-Ohio-7146, 850 N.E.2d 713, ¶ 6.

{¶ 51} Finally, attorney Harvey claims that Judge Spon ordered him to be seated and refused to allow him to discuss the magistrate's January 19 order. This is true, but what Harvey fails to mention is that the judge precluded Harvey from speaking on this matter because Harvey was not counsel of record for RCCSB in the dependency case. Harvey also ignores that Judge Spon allowed attorney Gilliland, who is counsel of record for RCCSB in the dependency case, to argue this issue. On this record, no reasonable and objective observer would harbor serious doubts about the impartiality of Judge Spon. *In re Disqualification of Lewis*, 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8 (setting forth the proper test for disqualifying a judge based on an appearance of impropriety).

17

*The Alleged Failure to Serve the January 24 Magistrate Order on RCCSB*

{¶ 52} Affiants' final allegation is that RCCSB was not served with a copy of the magistrate's January 24 order that Judge Spon relied on during the February 7 hearing. According to affiants, when Judge Spon alluded to this order during the February 7 hearing, they were "perplexed" because neither remembered ever seeing this order. Affiants further aver that they were both "hesitant" to deny having received the order because they were not "entirely sure" it had not been received. Affiants decided that it was necessary to examine their files before representing to the trial court that they had not received the order. Affiants maintain that they searched their files after the hearing had concluded, but they could not locate the January 24 order.

{¶ 53} The evidence in the record refutes affiants' claim. During the February 7 hearing, attorney Gilliland expressly and unequivocally stated that she had the January 24 magistrate order in her possession. Certainly if there were some question during the February 7 hearing whether RCCSB had been served with a copy of this order, logic would dictate that attorney Gilliland bring this to the trial court's attention, even if she was not "entirely sure" at that time.

### 4. Conclusion

{¶ 54} "A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George,* 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. Those presumptions have not been overcome in this case.

{¶ 55} For the reasons stated above, the affidavit and supplemental affidavit of disqualification are denied. The case may proceed before Judge Spon.

_____