[Cite as *Owais v. Costandinidis*, 2014-Ohio-4103.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

MURWAN R. OWAIS

        Plaintiff-Appellee

v.

DESPINA G. COSTANDINIDIS

        Defendant-Appellant


Appellate Case No.     2014-CA-5

Trial Court Case No.   2005-DR-312


(Appeal from Domestic Relations Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of September, 2014.

. . . . . . . . . . .

HEATHER R. GALL, Atty. Reg. No. 0071108, 1320 Dublin Road, Suite 101, Columbus, Ohio 43215
        Attorney for Plaintiff-Appellee

CASSIE L. SCRENGI, Atty. Reg. No. 0084895, 130 West Second Street, Suite 840, Dayton, Ohio
45402, PHILLIP HOOVER, Atty. Reg. No. 0034386, 260 North Detroit Street, Xenia, Ohio 45385
        Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}  Defendant-Appellant, Despina Constandinidis, appeals from a judgment reallocating parental rights and responsibilities and ordering her to report to jail for a period of thirty days, for failure to facilitate parenting time between Plaintiff-Appellee, Murwan Owais, and the parties' minor child, M.O.[1]  In support of her appeal, Despina contends that the trial court abused its discretion in changing the designation of M.O.'s residential parent,  and in sentencing Despina to jail.  Despina also contends that Murwan was the parent unwilling to facilitate a relationship with the minor child.  In addition, Despina maintains that the trial court showed bias and prejudice against her throughout the proceedings.  Finally, Despina contends that Murwan's motion to impose sentence should have been denied, because Despina followed the visitation provisions contained in a prior court order.

{¶ 2}  We conclude that the trial court did not abuse its discretion in designating Murwan as the residential parent and in sentencing Despina to jail.  The record contains ample evidence that modification of custody was in the child's best interests.  The record is also replete with evidence that Despina intentionally interfered with Murwan's ability to exercise his parental and companionship rights, and that Murwan was willing to pursue a relationship with his child.

{¶ 3}  We further conclude that we lack authority to address the issue of bias, because the exclusive remedy for a claim of judicial bias is the filing of an affidavit of bias with the Supreme Court of Ohio.  To the extent that impartiality in questioning witnesses under Evid.R. 614(B) has been raised, we find no evidence that the trial court's questions of an expert witness

---

[1]  For purposes of convenience, we will refer to the parties by their first names.  We also note that when the divorce was filed, the child's initial's were K.O., which used the father's surname.  During the divorce proceedings, Despina changed the child's name in probate court to M.C. (using Despina's last name), without notifying Murwan.  The child's name was later changed to M.O., again employing Murwan's surname.  To avoid confusion, we will refer to the minor child by her current initials, M.O.

were improper. Finally, we conclude that the trial court did not err in granting Murwan's motion to impose sentence. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 4} This case has a long, bitter, and involved history. In September 2005, Murwan filed a complaint for divorce against Despina, asking, among other things, for shared parenting of the parties' minor child, M.O., who was born on October 13, 2003. Despina filed an answer and counterclaim in October 2005, and immediately filed an emergency motion for temporary custody and exclusive use of the marital residence, as well as a motion requiring Murwan to surrender any passports listed in M.O.'s name. In an affidavit accompanying the motions, Despina alleged that Murwan had threatened M.O., had physically assaulted M.O., and had threatened to remove the child to Jordan. The court granted Despina exclusive use of the marital residence, restrained Murwan from removing the child from Greene County, Ohio, and required the surrender of the child's passport.

{¶ 5} On November 4, 2005, the court issued a temporary order stating that Despina would be the primary residential parent and that Murwan would have the standard order of visitation time. Within two days, Despina filed a motion asking the court to require Murwan to surrender the child's passport prior to exercising visitation. Despina then filed more motions on December 1, 2005, asking the court to suspend any visitation of Murwan with the minor child, and for contempt, for failure to surrender the passport. The motion to suspend visitation was based on alleged phone calls threatening to remove the child to Jordan.

{¶ 6} In January 2006, the trial court filed an amended order, again designating

Despina as the residential parent, and ordering that Murwan would have visitation in accordance with the standard visitation order. However, the court also stated that parenting time would be supervised for a period of 30 days pending the outcome of an investigation of the child's passport. Less than a week later, Despina filed a motion for an oral hearing on Murwan's impending unsupervised overnight visitation, which was anticipated to be the first weekend of February 2006. The motion was based on Murwan's alleged inconsistent contact with his daughter since birth. Despina also requested appointment of a guardian ad litem and that Murwan be required to undergo a psychological evaluation. In addition, she submitted the report of a "infant mental health specialist," who recommended supervised visits of 1 to 2 hours, based on M.O.'s symptoms of anxiety. At the time, the child was a little over two years old.

{¶ 7} On February 15, 2006, a magistrate filed a report allowing Murwan supervised parenting time on one weekend per month for a period of two hours the first time, three hours the second time, and four hours for the third, with a maximum of four hours per day. A home study was also ordered. In April 2006, the court ordered the release of information to the court's investigator. The release included Children Services Board (CSB) referrals and findings regarding the parties and their child, police records regarding the parties and Despina's parents, and employment records of the parties.

{¶ 8} Subsequently, in June 2006, Murwan filed a motion, requesting that he be permitted the court's order of standard visitation. Despina opposed this motion, again raising the issue of child abduction and the infant mental health specialist's opinion that supervised visits away from the child's home would be an appropriate "next step." The court then ordered supervised visitation once a week for 60 minutes at the Visitation Center. In addition, the court

ordered a psychological evaluation of the parties and child by Dr. Rebecca Hannah.

{¶ 9} In September 2006, a magistrate found that visitations had gone well, and ordered that Murwan should have unsupervised visitation away from the Visitation Center on Sundays, from 3:00 p.m. to 6:00 p.m. Despina immediately filed motions for findings of fact and conclusions of law. She also filed objections to the magistrate's decision. The objections again raised the alleged kidnaping threats. In response, the court modified the magistrate's decision on October 4, 2006, to require that both parties deposit their passports and the child's passport with the clerk of courts. The court further indicated that no parenting time would be permitted until the passports were in the clerk's custody. Once the passports were deposited, the court ordered visitation time to proceed as ordered in a domestic violence action that had apparently been filed in 2006.

{¶ 10} The trial of the divorce case occurred in March 2007. In August 2007, Murwan filed a motion asking for parenting time pursuant to the standard order of visitation. This was based on Dr. Hannah's recommendation, 10 months earlier, that M.O. be slowly introduced to the standard order of parenting time, as well as the report of the court's investigator in May 2006, that there was no need for supervised parenting time. Among other things, the investigator noted that Despina had not informed her parents, who were M.O.'s primary daytime caregivers, of her suspicions that Murwan might kidnap the child; a number of domestic disturbance incidents at the grandparents' home; and incidents of duplicity on Despina's part, such as when she changed the child's name without notifying Murwan, claiming that she had no way of notifying him when, in fact, they corresponded by e-mail during the relevant time. Despina opposed the motion for standard visitation. The court overruled Murwan's motion, based on the

fact that a decision on the merits of the divorce trial was in progress.

{¶ 11}   In October 2007, the court filed a judgment entry making Despina the residential parent and awarding Murwan the standard order of visitation during the school year, with extended parenting time during the summer.   The court noted that Murwan had previously had limited interaction with M.O. due to Despina's "unsubstantiated fears of international child abduction" and Murwan's work schedule.   *See* October 2, 2007 Final Judgment and Decree of Divorce, Doc. #119, p. 2.   The court further noted that Despina  had "not technically denied parenting time but has maneuvered to limit it and legally changed the child's name through probate court during the divorce proceedings without notifying [Murwan] or obtaining his consent."   *Id.* at p. 3.

{¶ 12}   Based on the fact that Murwan had not yet had overnight parenting time, the court ordered a gradual phase in, beginning on October 13, 2007, for approximately 24 hours. After four overnight visitations, the standard order of visitation would begin.   In addition, with respect to the award of extended visitation, the court made the following observations:

> The extended parenting time is awarded after the Court considers the obstacles to parenting time imposed on [Murwan] by the unfounded domestic violence action brought by [Despina]. * * * The child is a normal, healthy three year old and no credible evidence has been presented to substantiate [Despina's] fears of international abduction.   The Court has reviewed the parental evaluation and the home study report.   It has no concerns about the child's safety while in [Murwan's] care.   The Court's investigator and the testimony presented supports finding [Murwan] is a loving and caring parent. * * *

The Court finds it is in the child's best interest to know both of her parents. [Despina's] irrational fears have compromised [Murwan's] parenting time and acted as a barrier against the child's normal interaction with her father.

October 2, 2007 Final Judgment and Decree of Divorce, Doc. #119, p. 4.

{¶ 13} Despina appealed from the trial court's decision, and we affirmed the decision on appeal. *See Owais v. Constandinidis*, 2d Dist. Greene No. 2007 CA 89, 2008-Ohio-1615, which was issued in March 2008. In the meantime, on December 19, 2007, Despina filed a motion for an emergency hearing and a restriction of Murwan's visitation to supervised visitation. The motion was based on allegations that Murwan had sexually abused M.O.

{¶ 14} On January 8, 2008, the trial court filed an order for supervised parenting time for Murwan and the child, for 90 minutes a week, at the Visitation Center. Despina then filed motions for permanent modification of visitation limiting Murwan to 90 minutes supervised visitation per week, and for psychological evaluations. Although Murwan filed a request to terminate supervision and to allow the child to be taken outside of the United States to visit his terminally ill mother, the court denied the request. Murwan's filing included a report from a polygraph examiner, indicating that Murwan was truthful when he denied sexually abusing M.O.

{¶ 15} Dr. Hannah's custody evaluation, dated July 5, 2008, concluded: (1) that there was a clear pattern of Despina not facilitating a relationship between M.O. and Murwan; (2) that this interfered with Murwan's parenting time; and (3) that there were continuing allegations that were not substantiated. The doctor indicated that M.O. had a strong and loving relationship with both parents, and recommended a shared parenting arrangement. Dr. Hannah further indicated

that:

The mother would be recommended as the residential parent, *as long as she can facilitate a relationship with the other parent.* It is recommended that the court consider make-up parenting for the father. The court will need to monitor any parenting time decision in six months. The mother would benefit from individual, court-ordered counseling to address her paranoid disorder and to develop a co-parenting relationship with the father. If the mother continues to facilitate false allegations against the father which interfere with his parenting time, then the court may need to consider the father as the residential parent.

Plaintiff's Ex. 6, p. 9. (Emphasis added.)

{¶ 16} On July 30, 2008, the parties filed an agreed entry, in which Despina withdrew her motion for permanent modification of visitation. In addition, the parties agreed to return to the visitation ordered in the decree and to participate in joint counseling. Despina also agreed to notify Murwan about any activities, school-related events, and medical, dental, or psychological appointments.

{¶ 17} In 2009, Despina filed a number of motions against Murwan, including: (1) a contempt motion for failure to attend counseling; (2) a motion for modification of the summer visitation; (3) an emergency motion for a hearing on visitation; (4) a motion for an in camera interview with the child to determine the child's wishes as to custody and visitation; and (5) a motion to prohibit Murwan from contacting the child's school and medical/psychological providers. The court denied the motion for an in-camera interview, Despina later withdrew her motions for modification of parenting time and for an order prohibiting Murwan from contacting

M.O.'s school and heath-care providers.

{¶ 18}   Subsequently, in August 2010, Murwan filed a motion to reallocate parental rights, a motion to appoint the previous psychologist and investigator, and a motion for contempt.   The motions were based on Despina's alleged failure to provide parenting time and alienating behaviors toward the relationship of M.O. and Murwan.   Despina then filed a motion for contempt, based on Murwan's alleged failure to pay health care costs not covered by insurance.    These matters were scheduled for hearing in March 2011, and at that time, Murwan withdrew his motion to reallocate parental rights.   The remaining matters were then scheduled for hearing on May 5, 2011.   Before that hearing, however, Murwan filed a motion asking the court to allow him to take M.O. to Jordan.   Murwan's mother had died without meeting M.O., and Murwan wished M.O. to have contact with her grandfather.   Shortly thereafter, Despina filed another motion to modify visitation, based on Murwan's alleged failure to observe his visitation and M.O.'s unwillingness to visit with her father.

{¶ 19}   In April 2011, Murwan also filed another motion in contempt, regarding Despina's alleged failure to provide him with Spring Break 2011 visitation, and continued failure to comply with visitation orders.   Murwan then filed a second motion in contempt on June 23, 2011, based on Despina's alleged continued interference with visitation.

{¶ 20}   The trial court filed a decision in November 2011, sustaining Murwan's August 2010 motion for contempt.   The court concluded that Despina had willfully violated the parenting time order, and sentenced her to 30 days in jail, which could be purged by Despina following court orders and facilitating visitation.   In this regard, the court noted a number of unfounded police complaints and allegations of abuse filed by Despina in 2008, 2009, and 2010,

and times when Despina denied visitation, including an occasion when Murwan had flown to Ohio from Texas, where he was working, only to be denied access to his daughter.   In addition, the court held Murwan in contempt for his failure to pay medical expenses, and sentenced him to 30 days in jail, with the ability to purge the contempt by paying the expenses.

{¶ 21}   In the contempt decision, the court also allowed Murwan to take M.O. to Jordan, but imposed strict conditions, including the posting of a $100,000 cash bond, and other requirements designed to protect Despina.   Finally, the court also denied the  April and June 2011 contempt motions, because Murwan had declined visitation rather than deal with M.O.'s threats to hit and kick him.    The court further concluded that the parties should exchange M.O. curbside rather than use the visitation center.   In this regard, the court made the following order:

> The following procedrue [sic] will be used when the child is exchanged for parenting time:   The parent **recieving** [sic] the child for parenting time will pick the child up **curbside**.   This means the child will walk out of the other parent's house **unescorted**.   All goodbyes, hugging, and kissing will be done **before** the child walks out to the **receiving** parent's car.   The non-receiving parent will **close** the door of his or her house and **walk away** after making sure the child is able to walk to the car on her own.   The **receiving** parent is **ORDERED** to remain inside the car or vehicle until the child reaches the curb.   In the event the child refuses to walk to the receiving parent's car, the receiving parent will then exit his or her vehicle and physically pick up the child and place her in safety in his or her vehicle, regardless of her behavior.   All other matters of parenting time, with the exception of the Plaintiff's extended parenting time, will proceed under Greene

County's Standard Order of Parenting Time.

November 23, 2011 Judgment Entry, Doc. #263, pp. 10-11.   (Emphasis sic.)

**{¶ 22}**   Subsequently, in late June 2012, Murwan filed a notice regarding Despina's alleged failure to facilitate parenting time. In the motion, Murwan alleged that since the court's November 2011 order, he had received only four hours of parenting time with M.O., even though he had attempted on a consistent basis to obtain her.   On July 3, 2012, the court ordered Despina to deliver M.O. to the Greene County Visitation Center for release to Murwan on July 5, 2012, at 4:30 p.m., and to report to the Greene County Jail by 6:00 p.m. on the same date, to begin serving the 30-day jail sentence that had been previously imposed. The court also ordered Despina not to discuss the order to serve the jail sentence in any manner with M.O.

**{¶ 23}**   In response, Despina alleged that Murwan had failed to exercise his visitation, because he had not physically picked up the child and placed her in his vehicle, other than on one occasion.   As a result, the trial court set aside its order to report and scheduled the matter for a hearing on July 30, 2012.   The court left intact the other parts of its order, including the requirement that Despina deliver the child to the Visitation Center.

**{¶ 24}**   On August 6, 2012, Murwan filed another motion for the reallocation of parental rights and responsibilities.   In the motion, Murwan indicated that he now lived in Ohio, not far from Despina's address.   He alleged that despite the close proximity, Despina had kept the child from him, resulting in his having had the child for only one day of parenting time during the past year.   He also alleged that Despina's continued alienation of the child would result in severe, irreversible damage.   Both parties then requested and received orders appointing separate experts for purposes of conducting psychological evaluations.   In addition, the court

appointed Jennifer Getty as guardian ad litem (GAL) in November 2012.

{¶ 25} Hearings on the motion for reallocation were held on March 5 and 6, 2013, on August 26 and 27, 2013, and on October 4, 2013. Prior to the August 2013 hearing dates, Murwan filed a motion for contempt against Despina (on July 3, 2013), alleging that although he was supposed to have extended parenting time in the summer, he had parenting time with M.O. only for 4 days/nights that summer. Murwan also alleged that Despina had failed to return the child on two occasions after her mid-week parenting time, and had kept the child once for a week, and the second time, for two weeks.

{¶ 26} Following a hearing held on July 18, 2013, the trial court ordered that the child be released to Murwan on July 18, 2013, and further ordered a police officer to be present to assist Murwan in obtaining physical possession of the child. The court also ordered that Despina's parenting time for the rest of the summer would occur only on Wednesday evenings for 3 hours at the Visitation Center.

{¶ 27} At the rest of the hearings, the court took evidence from M.O.'s teacher and principal; psychologists called on behalf of both sides; the GAL; Murwan; and Despina. The parties also presented videos of Murwan attempting to pick up M.O. for parenting time and of interactions of M.O. and Murwan during their visits. After hearing the evidence, the trial court filed an entry on January 21, 2014, ordering Despina to report to the Greene County Jail on January 31, 2014, to serve two days. The remainder of the sentence would be suspended, on various conditions, including that Despina not discuss with M.O. the fact that she had been sentenced to jail, and that she not violate any orders of the court.

{¶ 28} The trial court also found the motion for reallocation of parental rights and

responsibilities well-taken. The court ordered that Murwan would be the primary residential parent effective January 21, 2014. In addition, the court restricted Despina's visitation to the Visitation Center, restricted visitation duration and frequency until such time as the GAL filed a petition for more parenting time, and imposed certain conditions on the visitation.

{¶ 29} Despina appeals from the judgment sentencing her to jail and reallocating the parental rights and responsibilities.

## II. Did the Trial Court Abuse Its Discretion in Changing the Residential Parent and in Sentencing Despina to Jail?

{¶ 30} Despina's First Assignment of Error states that:

The Trial Court Acted Unreasonably, Unconscionably, and Arbitrarily in Its Decision to Change the Residential Parent of the Child and in Sentencing Mother to Jail.

{¶ 31} Under this assignment of error, Despina presents two arguments to support her contention that the trial court abused its discretion. We will address these arguments separately.

### A. Alleged Error in Considering Expert Opinions

{¶ 32} With regard to her first issue, Despina contends that the trial court acted arbitrarily by dismissing the opinion of experts that were contrary to its own opinion without providing any sound justification for doing so. The experts in question were Jennifer Getty, the GAL, and Dr. Berman, the expert retained by Despina.

{¶ 33} Getty recommended that custody remain with Despina and that Despina drop the child at Murwan's house so that M.O. would not have an option to refuse to visit her father. Dr.

Berman initially testified that he had recommended in December 2012 that Despina retain custody, based on the facts known to him at the time. However, based on additional factors revealed during cross-examination, Dr. Berman stated that he would be more supportive of a change of custody if it were the only way to facilitate a relationship between M.O. and her father. Dr. Smalldon, Murwan's expert, recommended at least a temporary reversal of custody due to the degree of alienating behavior by Despina. Dr. Smalldon saw that as the only possible way to reverse the trend and prevent the profound risks to M.O. if she were not able to develop a healthy relationship with her father.

{¶ 34} The Supreme Court of Ohio has noted that while trial courts must be guided by the language in R.C. 3109.04, they also enjoy broad discretion in allocating parental rights and responsibilities. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). In this regard, the Supreme Court of Ohio has further stressed that "[t]he discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." (Citation omitted.) *Id.*

{¶ 35} Furthermore, "[i]n its role as fact finder, a trial court may choose to believe or disbelieve any witness, including an expert witness." *H.R. v. L.R.*, 181 Ohio App.3d 837, 2009-Ohio-1665, 911 N.E.2d 321, ¶ 15 (10th Dist.), citing *State v. White*, 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905, ¶ 71. " 'A trial court [also] is not bound to follow a guardian ad litem's recommendation.' " *Bomberger-Cronin v. Cronin*, 2d Dist. Greene No. 2014-CA-4,

2014-Ohio-2302, ¶ 27, citing *Lumley v. Lumley*, 10th Dist. Franklin No. 09AP-556, 2009-Ohio-6992, ¶ 46. "As the fact finder, the trial court determines the guardian ad litem's credibility and the weight to be given to the guardian ad litem's recommendation. Because assessment of the credibility and weight of the evidence is reserved for the trial court, we will not second guess the court's decision to disregard the guardian ad litem's recommendation." (Citation omitted.) *Lumley* at ¶ 46, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶ 36} On decisions concerning allocation of parental rights and responsibilities, our review is for abuse of discretion, which "is a term used to indicate that a trial court's decision is unreasonable, arbitrary or unconscionable." (Citations omitted.) *Bomberger-Cronin* at ¶ 16.

{¶ 37} In the case before us, the trial court noted that the GAL, Getty, had been brought into the case at a late date, and while the court considered her recommendations, they had already been tried. Specifically, the court observed that counseling, supervised visits, curbside exchanges, and physically picking up the child, among other things, had been tried and had failed. The court concluded that these failures were a result of Despina's alienating behaviors. In addition, the court noted Dr. Berman's testimony that he would support a change of custody if that were the only way to achieve M.O.'s healthy relationship with both parents.

{¶ 38} The record contains ample testimony supporting the trial court's conclusions. In addition to the testimony of Dr. Smalldon, the events from the beginning to the end of the case show a persistent attempt by Despina to prevent Murwan from seeing his child and from developing a healthy relationship with her. As a result, we cannot say the trial court abused its discretion in failing to adopt the recommendation of the GAL. Morever, as was noted, Dr.

Berman stated that he would consider a change of custody if it were the only way to facilitate a relationship between M.O. and Murwan. Dr. Smalldon's testimony clearly indicates that a change of custody was the only viable alternative, and the trial court did not act arbitrarily, unconscionably, or unreasonably in following his recommendation.

{¶ 39} As proof that the court's decision was arbitrary, Despina contends that although the trial court faulted Dr. Berman for not having complete information, the court had an ex parte conversation with Dr. Berman in which the court supported both Dr. Berman's role as an independent evaluator and Dr. Berman's decision not to read previous psychological reports. However, this is an incomplete representation of what occurred.

{¶ 40} Dr. Berman first testified on March 6, 2013. He indicated that he did not review any prior psychological evaluations because he was concerned that reading reports of other psychological evaluators might detract from his role as an independent evaluator. Dr. Berman then said that he had called the trial judge on February 15, 2013, and the judge was very supportive of his decision to adhere to his role as an independent evaluator and to not consult with any attorneys. Dr. Berman added that the judge also supported his decision not to read any other evaluations.

{¶ 41} At that point, the trial judge stopped Dr. Berman's testimony and asked counsel to come to his chambers. The judge then stated on the record that he recalled the conversation with Dr. Berman, but that his recollection differed regarding what he had told Dr. Berman to read or not read. The judge indicated that he had never told a psychologist or lawyer how to do his or her job. After making these remarks, the judge offered to recuse himself and have the Supreme Court of Ohio appoint a new judge to hear the case from the beginning. The judge did indicate

that he could make a decision based on the evidence in front of him without any regard to what Dr. Berman may have said about his remarks; he also said he believed that Dr. Berman had simply misinterpreted what was said.

**{¶ 42}** At that point, Murwan and his counsel indicated that they wished the judge to remain on the case. Despina's counsel added that when the ex parte conversation occurred, Dr. Berman's report and recommendations had already been completed. Finally, Despina's counsel made the following inquiry of his client:

> MR. HOOVER: And do you believe that the Judge can give a fair and accurate rendition of all the testimony and evidence in this case and render a fair verdict either for you or against you?
>
> MS. CONSTANDINIDIS: I do.
>
> MR. HOOVER: And you would accept any verdict that he came down with based upon a fair recitation of the facts and exhibits before him?
>
> MS. CONSTANDINIDIS: That's correct.

March 6, 2013 Hearing Transcript, p. 157.

**{¶ 43}** Accordingly, the trial court did not either support or fail to support Dr. Berman's decision not to read other evaluations of the parties. We also note that the experts in this case conducted different types of evaluations. Dr. Berman based his opinion on his interviews with the parties and M.O. in December 2012, as well the following items: the Minnesota Multiphasic Personality Inventory-2 (MMPI II), which was given to both parents; a checklist in which each parent rated the child's adjustment to home and community; a parenting skills inventory filled out by each parent; a parent child relationship inventory, again filled out by

each parent; a parent stress index answered by each parent; and items completed by M.O., including a parent report card.

{¶ 44}     In contrast, Dr. Smalldon conducted a forensic evaluation.  According to Dr. Smalldon, forensic evaluations differ from traditional clinical evaluations because forensic examiners review a variety of records like prior psychological evaluations, background investigations, GAL reports, and so forth, rather than merely interviewing the parties and conducting psychological tests.   Forensic evaluators are also different in that they somewhat skeptically view information that is given by the parties being evaluated.

{¶ 45}   In addition to reviewing a variety of records, Dr. Smalldon conducted clinical interviews with the parents and M.O., and gave the parents the MMPI-II.   He also administered other tests similar to those given by Dr. Berman, such as self-reporting inventories, and contacted other individuals who would have relevant information like the GAL and M.O.'s teacher and principal.

{¶ 46}   As a result, the trial court had several different opinions from which to choose, and was not required "to believe or disbelieve any witness, including an expert witness."  *H.R.*, 181 Ohio App.3d 837, 2009-Ohio-1665, 911 N.E.2d 321, at ¶ 15.   Dr. Smalldon's testimony, if believed, supported the decision to award custody to Murwan.


B.   Alleged Error in Analyzing R.C. 3109.04(F)(1) Factors

{¶ 47}   Despina's second argument is that the trial court erred in analyzing the "best interests of the child" factors in R.C. 3109.04(F)(1).   In this regard, Despina contends that the court's analysis concerning each factor is unreasonable based on facts before the court.

{¶ 48}    As relevant here, R.C. 3109.04(E)(1)(a) provides that:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

* * *

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶ 49}    The trial court concluded that all these conditions were satisfied, and that a modification was in the child's best interests.   In this regard, R.C. 3109.04(F)(1) details a list of non-exclusive factors that courts must consider in determining the best interests of the child. The trial court discussed each factor.    However, the court found most relevant R.C. 3109.04(F)(1)(f), which relates to "[t]he parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights."   In this vein, the court stated that:

It is clear from the evidence, testimony, and record in this case that the Defendant [Despina] has done almost nothing from the time of the last hearing involving the parental rights and responsibilities in this case (or even from the

beginning of the case) to the present day to ***facilitate*** court-approved parenting time rights and companionship rights between the Plaintiff [Murwan] and [M.O.].

The opposite is in fact what has been going on. The Defendant has done countless things which have attempted to interfere with or influence the relationship.

Judgment Entry Reallocating Parental Rights and Responsibilities and Duty to Report, Doc. #373, pp. 4-5. (Emphasis sic.)

{¶ 50} After making these comments, the court recounted fifteen examples of Despina's conduct. *Id.* at pp. 5-6. In her brief, Despina addresses a few of these examples, contending that the court's statements are not supported by the record. For example, the court noted that Despina had told M.O.'s school that Murwan was not allowed to see or talk to M.O. if Despina were not present, and that Despina threatened to sue the school if this demand were violated. *Id.* at p. 5. Despina argues that this is incorrect.

{¶ 51} We agree that the trial court misstated this fact. However, it may have been based on Dr. Smalldon's report, which noted M.O.'s school principal's statement that "The mother is very adamant about the father not having any contact with the daughter." Plaintiff's Trial Exhibit 5, p. 10. Nonetheless, the actual facts do not aid Despina. Instead, they support the court's decision.

{¶ 52} In this regard, M.O.'s 4th grade teacher, Patricia Covetch, testified that Despina had instructed her in writing at the beginning of the school year, that she (Despina) was to be notified if Murwan wanted a meeting with Covetch. In September of that school year, Murwan requested a conference, and Covetch notified Despina, who showed up for the conference.

When Covetch told Murwan, he said he did not want to have the meeting with Despina present and would be in touch. After Murwan left, Despina told Covetch that she did not want her to share anything with Murwan unless Despina were present.

**{¶ 53}** Covetch then contacted the school principal for guidance, since she was aware that both parents are entitled to information absent a court order. When the principal spoke with Despina to inform her that the school did not have to contact her about conferences with Murwan, Despina threatened to sue the school if the teacher were to have a conference with Murwan and she was not informed. The information sheet that Despina provided to the school also omits the name of M.O.'s father and refers to him as the "absent father." Court's Exhibit I.

**{¶ 54}** In contrast, Despina denied threatening to sue the school. The trial court, however, was entitled to believe the school officials rather than Despina, particularly since there were numerous other instances where Despina's testimony conflicted with that of other witnesses or even her own prior accounts or actions. For example, Despina denied signing a release allowing Dr. Smalldon to talk to third parties. In contrast, Dr. Smalldon stated that she did sign a release. Despina also insisted that she did not use a regular pediatrician for M.O. (in response to claims that she failed to provide Murwan with information about M.O.'s doctors). However, she had previously listed a pediatrician on her daughter's school information list. In another example, Despina told Dr. Berman that she refused to use the "ShareKids" website as a way of communicating, when she did, in fact, use it.

**{¶ 55}** As yet another example, Despina denied sending text messages to Murwan telling him (after his mother's cancer diagnosis) that cancer was a punishment from God, and

that she hoped his mother suffered a lot. On the same day, Despina asked if his mother was dead, and called Murwan a loser. Murwan submitted copies of these texts, and also showed Despina and her counsel the texts, which were still on his cell phone. *See* Plaintiff's Exhibit 18. Despina's explanation for denying sending the texts was that she would have been out that day with her family, celebrating Mother's Day.

**{¶ 56}** We have reviewed the entirety of the record, including the exhibits and videos of Murwan's many failed attempts to exercise court-ordered visitation with M.O. We find the remainder of the court's observations about Despina's failure to facilitate parenting time and companionship rights are well-supported by evidence in the record. Contrary to Despina's assertion, Murwan complied with the trial court's instructions regarding the curbside exchange. However, the child is shown repeatedly running into her mother's house or backyard before Murwan had an opportunity to get out of his car. Thereafter, the child never emerges, and there is no apparent attempt by Despina to make the child go with Murwan.

**{¶ 57}** Despina also contends that while videos show Murwan and M.O. having fun together, the therapists and GAL were unable to replicate similar emotions. We have reviewed the videos. They show M.O. interacting with her father at his house in a very carefree, relaxed, and happy fashion, in the summer of 2011, and in December 2012. In contrast, M.O. was very hostile with Murwan when her mother or people who could report to her mother were around. As the trial court noted, there was no credible evidence that Murwan had done anything to cause such reactions in front of others, and "[t]he child may well be afraid of her mother's reaction if it is reported to her [that the child] enjoyed her time with her father, as she is well aware that her mother does not want that to happen." Judgment Entry Reallocating Parental Rights and

Responsibilities and Duty to Report, Doc. #373, p. 4.

{¶ 58} Even Despina's own expert, Dr. Berman, stated that M.O.'s stated reasons for not wanting to see her father were superficial and were very old ones. Dr. Berman stated that he saw M.O.'s type of polarization "in a situation where children feel like they're forced to make a decision and have to totally accept one parent and totally reject the other one in order to make it in this world." October 4, 2013 Hearing Transcript, p. 651. There is no evidence that Murwan was the person forcing this decision on M.O.; to the contrary, the evidence indicates that Despina was the parent interfering with companionship and parental rights.

{¶ 59} As was noted, R.C. 3109.04(E)(1) requires courts to take into account the best interests of the child when modifying an allocation of parental rights and responsibilities, and we review the court's award for abuse of discretion. *Bomberger-Cronin*, 2d Dist. Greene No. 2014-CA-4, 2014-Ohio-2302, at ¶ 16.

{¶ 60} After reviewing the record, including the exhibits, we find no abuse of discretion in the trial court's decision regarding the best interests of the child. There was ample evidence to support the court's decision on each factor. Accordingly, the First Assignment of Error is overruled.

III. Was Murwan the Parent Unwilling to Facilitate a Relationship with M.O.?

{¶ 61} Despina's Second Assignment of Error, quoted verbatim, states as follows:

The Parent Unwilling to Facilitate a Relationship was Appellee. These Actions Directly Contributed to the Alienation of the Child.

{¶ 62} Under this assignment of error, Despina contends that Murwan has been the

party unwilling to facilitate a relationship with M.O. In support of this argument, Despina points to several alleged facts, including that Murwan: does not call his daughter on her cell phone and does not respond to her texts: insists on calling M.O. by a name other than her legal name; refuses to deviate from the court-ordered schedule of parenting time; refuses to discuss the child with Despina, and so forth.

{¶ 63} As was noted, the case has a long, tortured history. From the beginning, obstacles were constantly placed in the way of Murwan being able to develop a normal parent/child relationship with M.O. None of the obstacles has been substantiated, and no expert has found Murwan to be an inappropriate care-giver for the child.

{¶ 64} Murwan did admit that he became discouraged for a period of about six months in late 2011 and early 2012, and failed to attempt to see his daughter. However, between April 2012 and March 6, 2013, Murwan attempted to pick up M.O. for every parenting time that he was given by prior court orders. Although Murwan specifically followed the court's November 2011 order by picking the child up and placing her in the car on those occasions when she did not run away and hide in her mother's house or backyard, he was able to have only 9 hours of parenting time during this time period, and three of those hours were part of a visit with the GAL.

{¶ 65} Having viewed the videos, one can imagine how discouraging it would be for a parent to arrive perhaps hundreds of times to pick up a child, only to be met with the child running away, damaging his car, and throwing rocks – with no apparent intervention by the other parent to exercise control over the child's behavior. Furthermore, having reviewed the history of this case, one could understand why a parent might choose to not return texts telling the parent

that his child hated him. In fact, Murwan indicated that he believed the texts were sent by Despina using M.O.'s telephone, and he was concerned about Despina's manipulation. The record contains evidence to support this suspicion. In contrast to the established evidence, Despina maintained, even after she had been found in contempt, that she had never intentionally or unintentionally done anything, nor had she ever told M.O. anything to stop M.O. from going with her father.

{¶ 66} "We have previously emphasized, and stress once again, that children have certain rights, including ' "the right to love each parent, without feeling guilt, pressure, or rejection; the right not to choose sides; the right to have a positive and constructive on-going relationship with each parent; and most important * * * the right to not participate in the painful games parents play to hurt each other or to be put in the middle of their battles." ' " *Bell v. Bell*, 2d Dist. Clark No. 97-CA-105, 1998 WL 288945, *1 (June 5, 1998), quoting *Thomas v. Freeland*, 2d Dist. Greene No. 97-CA-06, 1997 WL 624331,*3 (Oct. 10,1997).

{¶ 67} Having found no abuse of discretion on the trial court's part, the Second Assignment of Error is overruled.

IV. Did the Trial Court Show Bias and Prejudice toward Despina?

{¶ 68} Despina's Third Assignment of Error states that:

The Trial Court Showed Distinct Bias and Prejudice Towards Appellant throughout the Proceedings.

{¶ 69} Under this assignment of error, Despina contends that the trial court exhibited bias toward her in a variety of ways, including: punishing her for contempt prior to taking

testimony on the contempt issue in July 2013; taking a particular "tone" in its decision reallocating parental rights; cross-examining her and her expert; and imposing a punitive parenting schedule. In response, Murwan notes that the trial court has questioned both parties throughout the proceedings, and, in fact, questioned Murwan extensively during the custody hearings. In addition, Murwan argues that the trial court simply did not find Despina credible.

{¶ 70} We are without authority to address the issue of the trial court's alleged bias against Despina, as her remedy would be the filing of an affidavit with the Supreme Court of Ohio. *Callison v. DuPuy*, 2d Dist. Miami No. 2002 CA 52, 2003-Ohio-3032, ¶ 22, citing R.C. 2701.03. "Pursuant to this procedure, the Chief Justice of the Ohio Supreme Court or his designee determines whether the judge is biased or prejudiced." *Id.,* citing *Beer v. Griffith*, 54 Ohio St.2d 440, 441, 377 N.E.2d 775 (1978), and Article IV, Section 5(C), Ohio Constitution. "This is 'the exclusive means by which a litigant may claim that a common pleas judge is biased and prejudiced.' " *Id.*, quoting *Jones v. Billingham*, 105 Ohio App.3d 8, 11, 663 N.E.2d 657 (2d Dist. 1995). *Accord State v. Cook*, 2d Dist. Champaign No. 2013 CA 22, 2014-Ohio-3165, ¶ 15.

{¶ 71} In *Cook,* we further observed that:

Even if we were to consider the issue, the Ohio Supreme Court has expressly stated that the failure to timely object to a trial judge's participation in a particular cause results in waiver of that objection. The Supreme Court stated: "In the absence of extraordinary circumstances, an affidavit of disqualification should not be used to disqualify a judge after lengthy proceedings have taken place in the case. A party may be said to have waived the right to obtain a judge's

disqualification when the alleged basis therefor has been known to the party for some time, but the objection is raised in an untimely fashion, well after the judge has participated in the proceedings." *In re Disqualification of Pepple*, 47 Ohio St.3d 606, 546 N.E.2d 1298 (1989). *See also, e.g., In re Disqualification of Spon*, 134 Ohio St.3d 1254, 2012-Ohio-6345, 984 N.E.2d 1069, ¶ 34 ("[I]t is well settled that an affidavit of disqualification must be filed as soon as possible after the affiant becomes aware of circumstances that support disqualification and that failure to do so may result in waiver of the objection.").

*Cook* at ¶ 14.

**{¶ 72}** In the case before us, the remarks that Despina complains of occurred at the July 18, 2013 contempt hearing. However, Despina did not file an affidavit of bias or prejudice, and instead participated in further hearings in August and October 2013. Accordingly, even if we could consider the issue, we would find that Despina has waived any objections.

**{¶ 73}** A related issue is the matter of the trial court's alleged improper questioning of witnesses. In this regard, we have previously observed that:

A trial court "may interrogate witnesses, in an impartial manner, whether called by itself or by a party." Evid.R. 614(B). " '[I]n the absence of any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony,' we presume that trial courts act [with] impartiality by asking questions from the bench, to learn material facts or develop the truth." *Easterling v. Easterling*, 2d Dist. Montgomery No. 18523, 2001 WL 369734, *2 (April 13, 2001), quoting *Jenkins v. Clark*, 7 Ohio App.3d 93, 97, 454 N.E.2d 541 (2d Dist.1982).

"Further, during a bench trial, a trial court enjoys even greater freedom in questioning witnesses because the court cannot prejudicially influence a jury with its questions or demeanor." *Brothers v. Morrone-O'Keefe Dev. Co.*, 10th Dist. Franklin No. 05AP-161, 2006-Ohio-1160, ¶ 11. "A trial court's questioning of a witness is not deemed partial for purposes of Evid.R. 614(B) merely because the evidence elicited during the interrogation was damaging to one of the parties." *Klasa v. Rogers*, 8th Dist. Cuyahoga No. 83374, 2004-Ohio-4490, ¶ 32. We review a trial court's questions under an abuse of discretion standard. *State v. Johnson*, 10th Dist. No. 03AP-1103, 2004-Ohio-4842, ¶ 10.

*Pinewood Gardens Apts. v. Whiteside*, 2d Dist. Montgomery No. 25989, 2014-Ohio-2207, ¶ 21.

**{¶ 74}** Again, we note that we have reviewed all the testimony and exhibits in this case. Because the court was the fact-finder, there was no jury that could have been improperly influenced. The court did question Dr. Berman, but the court's questions were designed to elicit a potential solution to the difficult issues in the case, since Dr. Berman was an expert, but was not aware of all the facts. Dr. Berman made a number of recommendations for steps that could be taken, like counseling, holding a parent in contempt, or granting extra parenting time, and said that, based on his "very limited knowledge, that going from custody of one parent to the other in one step is a pretty – very drastic move." October 4, 2013 Continuation of Testimony of Dr. Dene Berman, p. 10. The trial court then asked Dr. Berman if his opinion would change if the court had already done all or most all of those things. In response, Dr. Berman said that his opinion would change. *Id.*

**{¶ 75}** The court next asked Dr. Berman, "So what do you do ultimately when

everything else doesn't work? Because that's where we're at." *Id.* at pp. 10-11. Subsequently, the court also asked Dr. Berman whether he had looked at the court docket for the case, and Dr. Berman said he had not. The court then recited various items in the docket, and asked the doctor if it were in the best interests of the child for there to be a pattern in which Despina had attempted to restrict Murwan's parenting time. Dr. Berman answered that this would not be in the child's best interests. *Id.* at pp. 27-31.

{¶ 76} From the court's questions, it is clear that the court was simply attempting to arrive at the best solution in a very difficult situation. We see no evidence of partiality under Evid.R. 614(B), even though the responses to the questions did not aid Despina's case.

{¶ 77} The final issue raised by Despina is that the parenting schedule the trial court imposed is punitive in nature. To the extent that this implies bias on the trial court's part, we again note that filing an affidavit of bias would be Despina's remedy. However, if we were able to consider this issue, we would find it without merit. The parenting schedule that the court imposed is consistent with Dr. Smalldon's recommendations. Specifically, Dr. Smalldon recommended a temporary reversal of custody and limited visitation for Despina for a significant period of time. Dr. Smalldon also stated that *contingent* on Despina's actions, there should be something approximating a shared parenting arrangement at some later point, with Murwan designated as the default decision-maker.

{¶ 78} Consistent with these recommendations, the trial court granted primary residential status to Murwan and restricted Despina's visitation to the Visitation Center. The court allowed Despina a one-hour visit the third week after the change of custody, and, after 28 days, 90 minutes for a minimum of one time per week. Although this is less time than Dr.

Smalldon recommended, the court was not required to follow his recommendation to the letter.

{¶ 79}    The trial court further ordered that the GAL could petition for more visitation time at the Visitation Center, after consulting with M.O.'s counselor.   Thus, the court allowed input from seasoned professionals, and gave Despina an opportunity for increased visitation. We see nothing arbitrary, capricious, or unreasonable in these efforts to undo the damage that had been done to the child.

{¶ 80}    Accordingly, the Third Assignment of Error is overruled.


### V.   Should the Contempt Sentence Be Vacated?

{¶ 81}    Despina's Fourth Assignment of Error, quoted verbatim, states as follows:

The Motion to Impose Should Be Vacated, as Appellant Followed the November 23, 2011 Entry.

{¶ 82}    Under this assignment of error, Despina contends that she was not in contempt of the trial court's order of November 23, 2011, because the order only required that M.O. leave Despina's house and that Despina close the door behind her.   According to Despina, Murwan is the party who failed to follow the court's orders because he did not pick the child up and force her into his car.

{¶ 83}    "Contempt of court" is defined as " 'disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions.' "   *Denovchek v. Trumbull Cty. Bd. of Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988), quoting *Windham Bank v. Tomaszczyk,* 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus.   " '[T]he

purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice.' Therefore, since the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the trial judge." *Id.*, quoting *Windham Bank* at paragraph two of the syllabus.

{¶ 84} Although contempt proceedings are said to be neither civil or criminal, courts often need to classify them as either civil or criminal. *Denovchek* at 16. "The distinction between civil and criminal contempt is based on the character and purpose of the contempt sanctions. If sanctions are primarily designed to benefit the complainant through remedial or coercive means, then the contempt proceeding is civil. Often, civil contempt is characterized by conditional sanctions, i.e., the contemnor is imprisoned until he obeys the court order. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence or fine. Its sanctions are punitive in nature, designed to vindicate the authority of the court." (Citations omitted). *Id.*

{¶ 85} The contempt in this case was civil, because it was intended to benefit Murwan through coercive means, and was suspended, contingent on Despina's compliance with court orders. Only after Despina again failed to comply with the court's order was the sentence imposed.

{¶ 86} " 'A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of that order.' " *Jenkins v. Jenkins*, 2012-Ohio-4182, 975 N.E.2d 1060, ¶ 12 (2d Dist.), quoting *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4. " 'Clear and convincing

evidence is the standard of proof in civil contempt proceedings.' " *Id.*, quoting *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP1176, 2011-Ohio-5972, ¶ 13. "We review the trial court's decision whether to find a party in contempt under an abuse-of-discretion standard." *Id.*, citing *Wolf* at ¶ 4.

{¶ 87}     After reviewing the record, we find no abuse of discretion. The record is replete with instances when Despina failed to comply with court orders pertaining to visitation. It is unreasonable to argue that Despina did not violate court orders because she stayed inside her home with the door closed. When M.O. ran inside the house or into the backyard, Despina should have exercised parental control and should have required M.O. to leave with her father. Furthermore, it is also unreasonable to argue that Murwan is the party who violated court orders by failing to physically drag his daughter into the car. On the two occasions when it was possible, this technique was employed. On the rest of the occasions, the child is seen in the videos running away from the driveway, back into the house or the backyard, before Murwan had a chance to exit from his car.

{¶ 88}     As has been stressed, the history of this case is long and it is also very troubling. It is clear that after eight years of interference with parental rights, the trial court was left with no alternative but to impose a jail sentence on a party who, unfortunately, has continuously placed her own desires above her child's needs. We additionally note that the trial court imposed various safeguards so that M.O. will not be aware that her mother is in jail. Whether these safeguards will be effective is another question, since M.O. reported to Dr. Smalldon in December 2012 that her mother had said that Murwan wanted to put her (Despina) in jail.

{¶ 89}     We emphasize also that, contrary to Despina's claims, the record does not

indicate that Murwan "wanted" to put Despina in jail for the sake of placing her in jail, nor was this an option the trial court lightly chose. Instead, there appeared to be no other option to make Despina realize that the court was serious about enforcing Murwan's parental rights.

{¶ 90} Accordingly, the Fourth Assignment of Error is overruled.

## VI. Conclusion

{¶ 91} All of Despina's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, P.J., and HALL, J., concur.