[Cite as *In re M.C.*, 2021-Ohio-1668.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | Appellate Case No. 2020-CA-24 |
| M.C. | : | Trial Court Case No. 2011-JG-39 |
|  | : | (Appeal from Common Pleas Court – Juvenile Division) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of May, 2021.

. . . . . . . . . . .

SARA M. BARRY, Atty. Reg. No. 0090909, 301 West First Street, Suite 207, Dayton, Ohio 45402
 Attorney for Appellant, Mother

CATHY J. WEITHMAN, Atty. Reg. No. 0020889, 201 West Court Street, Urbana, Ohio 43078
 Attorney for Appellee, Father

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Mother appeals from a juvenile court's judgment finding her in contempt of court for violating a shared parenting plan. She argues that the court's decision was not supported by the evidence and was an abuse of discretion. Mother also argues that the court erred by conducting an in-chambers interview of the minor child. Finding no error, we affirm.

## I. Factual and Procedural Background

{¶ 2} In 2014, the trial court entered a shared parenting plan regarding M.C. Under the plan, Mother was allowed parenting time at the home of her mother, the child's grandmother. Mother was not permitted to take the child elsewhere without Grandmother's permission, and any overnight visits had to be at Grandmother's house. In May 2020, Father filed a motion for contempt alleging that Mother had been violating the shared parenting plan by having the child at her own house during the day and overnight.

{¶ 3} The trial court scheduled an in-chambers interview with the child and allowed the parties to submit questions to the court beforehand. On July 6, the trial judge conducted the interview in her chambers; only the judge and bailiff were present. Nine-year-old M.C. told the judge that she sometimes stayed overnight at Mother's house. The interview was recorded and sealed.

{¶ 4} An evidentiary hearing was also scheduled for early August. In late July, Father filed a motion to suspend parenting time until after the hearing. He alleged that M.C. did not want to go to Mother, because Mother took her to Mother's own house and because Mother discussed the case with her and expressed unhappiness with M.C. The

trial court said that it would consider both of Father's motions at the scheduled evidentiary hearing.

**{¶ 5}** At the August hearing, Father testified that M.C. had told him that Mother repeatedly had taken M.C. to her own (Mother's) house and had kept M.C. there overnight. Mother testified that Grandmother worked during the day and that Mother had visited with the child at Grandmother's home or, with Grandmother's permission, at Mother's home. Regarding any claim that the child had stayed overnight at her house, Mother said that the child admitted to her that she had lied during her in-chambers interview. Grandmother's testimony corroborated Mother's. Grandmother testified that, because of her work schedule, she was not always available to supervise Mother's parenting time, but that she gave Mother permission to care for the child when she was not available. According to Grandmother, sometimes the parenting time took place at her house, and sometimes it took place at Mother's house or other locations, but Mother always brought the child back to Grandmother's house in the evening, in time for dinner. Grandmother testified that she did not allow Mother to take the child overnight and that she (Grandmother) believed the child had been confused if the child said otherwise.

**{¶ 6}** The trial court did not believe Mother. In an August 10, 2020 entry, the court made several findings, including that Mother's parenting time had not always taken place at Grandmother's house and that Grandmother had not always been present during Mother's overnight parenting time. The court found Mother in contempt for violating the shared parenting order and sentenced her to 30 days in jail and a fine, both of which were suspended as long as Mother complied with all court orders. The court concluded that the contempt finding was not serious enough to suspend Mother's parenting time, and it

ordered the shared parenting plan to continue with Mother's parenting time to take place at Grandmother's house and nowhere else unless accompanied by Grandmother.

{¶ 7} Mother appeals.

## II. Analysis

{¶ 8} Mother's sole assignment of error alleges:

THE TRIAL COURT'S CONTEMPT DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS THUS AN ABUSE OF DISCRETION, IN PART DUE TO ITS RELIANCE ON AN IN CAMERA INTERVIEW.

{¶ 9} "Contempt of court is defined as disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk,* 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus. "The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." *Id.* at paragraph two of the syllabus. "Therefore, since the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the trial judge." (Citation omitted.) *Denovchek v. Bd. of Trumbull Cty. Commrs.,* 36 Ohio St.3d 14, 16, 520 N.E.2d 1362 (1988).

{¶ 10} "Although contempt proceedings are said to be neither civil [n]or criminal, courts often need to classify them as either civil or criminal." *Owais v. Costandinidis,* 2d Dist. Greene No. 2014-CA-5, 2014-Ohio-4103, ¶ 84, citing *Denovchek.* " 'If sanctions are primarily designed to benefit the complainant through remedial or coercive means,

then the contempt proceeding is civil.' " *Id.,* quoting *Denovchek* at 16. "Normally, contempt proceedings in domestic relations matters are civil in nature because their purpose is to coerce or encourage future compliance with the court's orders." (Citations omitted.) *Fidler v. Fidler,* 10th Dist. Franklin No. 08AP-284, 2008-Ohio-4688, ¶ 11.

{¶ 11} " 'A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of that order.' " *Jenkins v. Jenkins,* 2012-Ohio-4182, 975 N.E.2d 1060, ¶ 12 (2d Dist.), quoting *Wolf v. Wolf,* 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4. "A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with the court's prior orders." (Citation omitted.) *Moraine v. Steger Motors, Inc.,* 111 Ohio App.3d 265, 268, 675 N.E.2d 1345 (2d Dist.1996). We review a contempt decision for abuse of discretion. *Jenkins* at ¶ 12, citing *Wolf* at ¶ 4.

{¶ 12} As an initial matter, Mother contends that the court should not have considered what the child said during the in-chambers interview. Mother argues that an in-chambers interview should not be considered in a contempt proceeding, because it violates a parent's right to due process when a court relies on evidence that is not subject to cross-examination and, in this case, comes from a nine-year-old child who is a vulnerable, incompetent witness and subject to undue influence.

{¶ 13} But Mother did not raise this argument before the trial court, nor did she raise any objection to the in-chambers interview at the hearing. Indeed, it appears from the transcript that Mother had agreed to the interview. At the end of the hearing, there was a brief discussion about the fact that a guardian ad litem (GAL) had not been appointed. Mother's attorney told the court that she (Mother's attorney) had said that she

would agree to the appointment of a GAL but that the court had said that it would do an in-chambers interview instead and that Mother's attorney had agreed. "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. Accordingly, Mother has waived this issue. *See In re T.B.-G.*, 8th Dist. Cuyahoga No. 106713, 2018-Ohio-4116, ¶ 5 (concluding the same where the mother argued that the interview procedures in R.C. 3109.04(B)(1) violated due process but had not raised the argument in the trial court or objected to the interview).

{¶ 14} We likely would not have found a problem with the in-chambers interview anyway. R.C. 3109.051(C) states that a trial court may conduct an in-chambers interview of a child for the purpose of "resolving any issues related to the making of any determination with respect to visitation rights or the establishment of any specific visitation schedule." The Fifth District has concluded that "this language is broad enough to encompass a hearing on charges of contempt relative to visitation rights." *Richardson v. Richardson*, 5th Dist. Fairfield No. 99CA28, 2000 WL 93679, *4 (Jan. 19, 2000). The Eighth District has agreed, and has further held that an in-chambers interview for purposes of contempt did not violate the mother's right to due process, *Sagan v. Tobin*, 8th Dist. Cuyahoga No. 86792, 2006-Ohio-2602, ¶ 31, citing *In re Whitaker*, 36 Ohio St.3d 213, 522 N.E.2d 563 (1988) (holding, under pre-R.C. 3109.051 law, that in-chambers interviews do not deny parties due process). So the only question is whether the trial court's decision to conduct the interview was an abuse of discretion. In this case,

it was not. A nine-year-old child is competent to testify as to whether she had been staying overnight at her mother's house. In addition, the record shows that only the judge and the bailiff were present at the in-chambers interview, that the interview was recorded, and that, beforehand, the court allowed counsel to submit potential questions.

{¶ 15} At the in-chambers interview, the child told the judge that she had sometimes stayed overnight at Mother's own house. Father testified that the child had told him the same. Conversely, both Mother and Grandmother testified that the child had never stayed overnight at Mother's own house. But the trial court expressly found that Mother's testimony was not credible and that Grandmother was not always present during Mother's overnight parenting time.

{¶ 16} Ultimately, the credibility of the witnesses and the weight to be given to their testimony were matters for the trier of fact to resolve. *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). As we have said, "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). Accordingly, we defer to the trial court's decision to believe the child and to disbelieve Mother.

{¶ 17} As the shared parenting plan prohibited Mother from having the child overnight at her house, the trial court's contempt decision was not against the weight of

the evidence, and the trial court did not abuse its discretion in finding Mother in contempt.

### III. Conclusion

**{¶ 18}** The sole assignment of error is overruled. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Sara M. Barry
Cathy J. Weithman
Hon. Lori L. Reisinger