[Cite as *J. Griffin Ricker Assocs., L.L.C. v. Well*, 2022-Ohio-1470.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| J. Griffin Ricker Associates, LLC, | : | |
| Plaintiff-Appellant, | : | No. 21AP-29 |
| | | (C.P.C. No. 18CV-9353) |
| v. | : | |
| Steve Well, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on May 3, 2022

**On brief:** *Law Offices of James P. Connors*, and *James P. Connors*, for appellant. **Argued:** *James P. Connors.*

**On brief:** *Steve Well*, pro se. **Argued:** *Steve Well.*

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, J. Griffin Ricker Associates, LLC, appeals a judgment entered by the Franklin County Court of Common Pleas dismissing appellant's lawsuit against defendant-appellee, Steve Well, with prejudice after enforcing the parties' settlement agreement. For the following reasons, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In November 2018, appellant sued appellee for breach of contract, conversion, and trade secrets misappropriation arising from a consulting agreement between the parties whereby appellee was to provide, as an independent contractor, insurance consulting and other services to appellant. In the complaint, appellant sought injunctive relief as to trade secret, confidential information, and competition concerns as well as compensatory, punitive, and statutory damages, attorney fees, and costs of the

action. After appellee failed to timely respond, appellant moved for default judgment, which the trial court initially granted in February 2019. Referencing a pending lawsuit between the parties in Minnesota, and claiming appellant obtained default judgment by misrepresentation and fraud, appellee moved to vacate the default judgment and requested an oral hearing. The trial court set the matter for an evidentiary hearing to occur on September 5, 2019.

{¶ 3} During the September hearing, the trial court "conducted a mediation to try and resolve all the issues." (Sept. 5, 2019 Tr. at 2.) The trial court judge stated he "believe[d] this matter is settled" with the following terms: the parties would dismiss or refrain from filing the potential litigation in Minnesota; the parties would execute a standard mutual release "releasing everything"; appellee would pay appellant a certain amount of money within 30 days; and appellee would provide to appellant "a list of 20 contacts * * * of sales leads or attempts to make leads, along with addresses." (Sept. 5, 2019 Tr. at 2-4.) Both parties agreed these terms matched their understanding of the settlement agreement and did not offer any further information or clarification. Both parties also stated they were entering the settlement agreement with the advice of counsel and doing so knowingly, intelligently, and voluntarily.

{¶ 4} On September 26, 2019, the trial court entered an order stating the parties disputed the terms of the settlement agreement. According to the order, appellant claimed the contacts appellee furnished were not the "best contacts" and were "worthless," and that provision of the contacts were a material part of the settlement agreement. (Sept. 26, 2019 Order at 1.) The order further states, "[t]he Court does not recall the twenty (20) contact names as a 'material' settlement term. However, the settlement was not placed on the record and because a dispute exists the Court finds there is no settlement. * * * The Court is unwilling to mediate this case further. The Court finds there is no settlement." (Sept. 26, 2019 Order at 1-2.) Then, finding appellee had rebutted the presumption of service, the trial court vacated the default judgment and scheduled the case for trial.

{¶ 5} On October 23, 2019, appellee filed a motion to vacate the trial court's September 26, 2019 order. Within it, appellee contended that the parties' settlement agreement was placed on the record in open court and attached the transcript of the September 5, 2019 hearing. Appellee further contended that he performed under his

obligation to provide what he believes to be "the 20 best business contacts – *i.e.*, sales leads or attempts to make leads, along with addresses – reached during the scope of his employment with [appellant,]" and that appellant breached the agreement by refusing to execute or sign a release. (Memo in Support of Mot. to Vacate Sept. 26, 2019 Order at 3-4.) Therefore, appellee asked the trial court to enter an order vacating the September 26, 2019 order and instead enforce the settlement agreement.

{¶ 6} Appellant filed a memorandum contra and the trial court thereafter referred the matter to a magistrate and set an "[o]ral [h]earing" on the motion to vacate. (Jan. 24, 2020 Order of Reference and Notice at 1; Feb. 19, Mar. 25, and June 8, 2020 Mag.'s Scheduling Order at 1.) Following several continuances, the hearing occurred on July 8, 2020.

{¶ 7} The magistrate issued a decision on September 23, 2020. The magistrate's decision states the July 8, 2020 "evidentiary hearing" was attended by counsel for appellant and appellee, appearing pro se. (Sept. 23, 2020 Mag.'s Decision at 7.) According to the magistrate, at the evidentiary hearing "each side was afforded * * * an opportunity to call witnesses, cross examine opposing witnesses, and offer oral argument." (Mag.'s Decision at 18.) Appellee and appellant testified and both parties stipulated to incorporating the relevant previous briefings and attached exhibits.

{¶ 8} The magistrate found the parties had both agreed to allow the trial court judge to mediate the dispute on September 5, 2019. The magistrate's decision references the parties' testimony describing the mediation, which reflects that the parties were separated during the mediation and with the trial court judge acting as the "go-between, caucusing separately with the respective parties and counsel." (Sept. 23, 2020 Mag.'s Decision at 3, 11, 18.) The magistrate further found the parties agreed the specific terms of the negotiated settlement were formally placed on the record, and essentially contested the meaning of the contact list term of the settlement and whether appellee performed that term with the list he provided to appellant. (Mag.'s Decision at 3, 18.)

{¶ 9} Ultimately, the magistrate concluded the settlement agreement negotiated between the parties is enforceable and appellee demonstrated he satisfied all conditions and/or responsibilities that were negotiated by parties and counsel. As a result, the

magistrate determined that appellee's October 23, 2019 motion to enforce settlement agreement should be granted.

{¶ 10} Appellant submitted objections to the magistrate's decision asserting: the magistrate exceeded his authority by expanding the scope of the referral order and conducting an evidentiary hearing without notice to appellant; there was no meeting of the minds between the parties and therefore no enforceable settlement agreement; the substance of the settlement agreement concerning the list of contacts was legitimately disputed by appellant; a factual dispute exists requiring submission of the matter to a jury; the decision contains certain findings of fact errors, including the parties both agreeing to a mediation; and the magistrate incorrectly determined the meaning of the contacts list term and found appellee complied with that term.

{¶ 11} Appellant moved for leave of court to file a "video/audio recording" of the July 8, 2020 hearing before the magistrate instead of filing a written transcript. (Oct. 28, 2020 Mot. for Leave at 1.)  The trial court granted leave provided that appellant file a document outlining the specific time points relied on by the objections.  Appellant filed a CD containing a video of the hearing before the magistrate, updated his objections to the magistrate's decision with citations to the video, and attached a summary document of his "citations to time references" corresponding to the video of the July 8, 2020 magistrate's hearing. (Ex. A to Nov. 17, 2020 Objs. at 1.)

{¶ 12} On December 15, 2020, the trial court issued a decision overruling appellant's objections and adopting the magistrate's decision.  Based on the settlement agreement, the trial court ordered the matter dismissed with prejudice.  A dismissal entry appears on the record on January 4, 2021.

{¶ 13} Appellant filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 14} As a preliminary issue, we note a discrepancy exists between the two assignments of error argued in appellant's legal analysis and the list of five assignments of error prefacing the legal analysis.[1]  Because appellant has not separately argued the five assignments of error listed in the preface to the legal analysis, we limit our review to those two assigned errors appellant argues separately and supports with legal authority. *See*

---

[1] *Compare* Appellant's Brief at ii-iii, 14, 39 *with* Appellant's Brief at v-vi.

App.R 16(A)(7) (stating an "appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies"); App.R. 12(A)(2) (stating this court may disregard an assignment of error presented for review if the party raising it fails to argue the assignment separately in the brief, as required under App.R. 16(A)). Accordingly, we address the following two assignments of error:

> I. THE TRIAL COURT ERRED BY FINDING THAT APPELLEE STEVE WELL DID NOT BREACH THE SETTLEMENT AGREEMENT AND, FURTHER, BY DISMISSING THE CASE.

> II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DEPRIVING APPELLANT OF DUE PROCESS BY (1) FAILING TO PROVIDE HIM WITH NOTICE OF AN EVIDENTIARY HEARING ON APPELLEE'S MOTION TO VACATE AND BY (2) DECIDING THE ISSUE OF COMPLIANCE WITH THE SETTLEMENT AGREEMENT AS A MATTER OF LAW INSTEAD OF A DISPUTED FACT FOR THE FACT FINDER, OR ALTERNATIVELY, BY FAILING TO RECUSE HIMSELF DUE TO BEING A KEY WITNESS ON THE SETTLEMENT AGREEMENT.

## III. ANALYSIS

{¶ 15} In his first assignment of error, appellant asserts the trial court erred in finding appellee did not breach the settlement agreement concerning the contacts list term and consequently erred in enforcing the agreement to dismiss the case. In appellant's second assignment of error, appellant argues his due process rights were violated when the trial court failed to provide him with notice of an evidentiary hearing and resolved the issue of compliance as a matter of law and/or without recusing himself. For the following reasons, we find appellant has not demonstrated reversal is warranted in this case.

### 1. First assignment of error—breach of the settlement agreement

{¶ 16} As a preliminary issue, appellant has not provided this court with a transcript of the July 8, 2020 hearing before the magistrate. Under App.R. 9(B)(1), absent an exception not at issue here, "it is the obligation of the appellant to ensure that the proceedings the appellant considers necessary for inclusion in the record, *however those proceedings were recorded*, are transcribed in a form that meets the specifications of

App.R. 9(B)(6)." (Emphasis added.) " 'The transcription of any necessary proceedings is, therefore, required, and an appellant may not rely solely on an audio-recording for purposes of his or her appeal.' " *A.R.C. v. D.J.S.*, 10th Dist. No. 19AP-807, 2020-Ohio-5403, ¶ 14, quoting *State v. Tinley*, 9th Dist. No. 17CA0062-M, 2018-Ohio-2239, ¶ 6. *See also In re Adoption of Z.A.-O.J.*, 5th Dist. No. 16-CA-05, 2016-Ohio-3159, ¶ 15 ("Though the file contained an audio recording of the adoption hearing, it is clear from the Staff Notes to App.R. 9 that while a trial court may choose to record the proceedings through the use of an audio-recording device, 'regardless of the method of recording the proceedings, a transcript is required for the record on appeal' "); *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980) ("The duty to provide a transcript for appellate review falls upon the appellant.").

{¶ 17} Here, appellant's first assignment of error, which essentially challenges the trial court's adoption of the magistrate's conclusion on the merits in favor of appellee on the settlement agreement issues, including the issue of good faith and fair dealing, is premised on evidence offered at the July 8, 2020 magistrate's hearing. In these circumstances, "[a]bsent a transcript, this court must presume the regularity of the proceedings below and affirm the trial court's decision." *Lee v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 06AP-625, 2006-Ohio-6658, ¶ 10; *Knapp* at 199. *Mazanec v. Marinkovic*, 9th Dist. No. 21CA0042-M, 2022-Ohio-1085, ¶ 4-10 (overruling assignments of error, including assertion of error in trial court's interpretation of parties' agreement, based on the lack of transcript under App.R. 9(B)(1)).

{¶ 18} While appellant cannot sustain his first assignment of error due to the lack of a transcript of the July 8, 2020 hearing and, therefore, the lack of the transcript independently supports overruling this assignment of error, we additionally find, in the alternative, that the plain language of the parties' settlement agreement supports the trial court's decision.

{¶ 19} "[A]n oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract." *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 15. "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Id.* at ¶ 16, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991). While the terms of the agreement

must be " 'reasonably certain and clear' " to constitute a valid settlement agreement, " 'all agreements have some degree of indefiniteness and some degree of uncertainty.' " (Citations omitted.) *Kostelnik* at ¶ 17.

{¶ 20} Here, appellant admits "[t]he parties reached a settlement agreement that day, September 5, 2019, which was acknowledged on the record" and "[t]he parties agree that a settlement agreement was reached." (Appellant's Brief at 9, 16.) However, after receiving the list of contacts from appellee, appellant believes there was no meeting of the minds "on the key agreement term requiring appellee to provide a list of 20 *actual* sales leads/contacts made by appellee while working for appellant" and references his understanding these contacts would be "legitimate viable business contacts." (Emphasis sic.) (Appellant's Brief at 16, 22.) Contrary to appellant's position, the parties both expressly agreed to the language employed in the settlement agreement and declined to refine this language further. Having reviewed that settlement agreement, we find the essential terms of the settlement agreement were sufficiently certain to demonstrate mutual assent necessary to form a binding agreement. *See Kostelnik* at ¶ 32 (refusing to add specificity to a settlement agreement term and noting, "that terminology should have been placed on the record or memorialized in some writing at the time the case was settled").

{¶ 21} Second, the plain language of the settlement agreement supports the trial court's conclusion that appellee did not breach the settlement agreement as to the contact list term. The construction of written contracts involves issues of law that appellate courts review de novo. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. The purpose of contract construction is to realize and give effect to the intent of the parties. *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus. "[T]he intent of the parties to a contract resides in the language they chose to employ in the agreement." *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992).

{¶ 22} When parties to a contract dispute the meaning of a term, courts must first look to the contract to determine whether an ambiguity exists. *Antonucci v. Ohio Dept. of Taxation*, 10th Dist. No. 09AP-629, 2010-Ohio-3326, ¶ 6-8, *appeal not accepted*, 127 Ohio St.3d 1447, 2010-Ohio-5762 (applying general contract law principles to determine a settlement agreement provision was clear and unambiguous). "When the language of the

contract is clear, courts look no further than the contract to find the intent of the parties" and resorting to evidence outside of the contract itself is inappropriate. *Starr v. Ohio Dept. of Commerce Div. of Real Estate & Professional Licensing*, 10th Dist. No. 20AP-47, 2021-Ohio-2243, ¶ 42; *Antonucci* at ¶ 8, 15 ("[W]hen contract terms are clear and unambiguous, courts will not, in effect, create a new contract by finding an intent which is not expressed in the clear language utilized by parties."). Notably, " 'a court cannot create ambiguity in a contract where there is none,' " including "creating an ambiguity by asking whether the parties could have included different or more express language in their agreement." *AKC, Inc. v. United Specialty Ins. Co.*, ___Ohio St.3d___, 2021-Ohio-3540, ¶ 12, quoting *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, ¶ 16. *See also Vail v. String*, 8th Dist. No. 107112, 2019-Ohio-984, ¶ 27 ("A court cannot, in the name of contract construction, rewrite a contractual provision, add words or restrictions to an agreement or make a different or better agreement than the parties made for themselves.").

{¶ 23} In this case, the plain language of the parties' agreement required appellee to produce "a list of 20 contacts * * * of sales leads or attempts to make leads, along with addresses." (Sept. 5, 2019 Tr. at 3-4.) Appellant's contention that appellee was obligated to produce "a list of 20 actual sales contacts/leads made while working for appellant" and his reference to his understanding these contacts would be "legitimate viable business contacts" attempts to add words or restrictions not within the parties' agreement. (Appellant's Brief at 16, 22.) Appellant's additional argument that appellee breached a duty of good faith and fair dealing is based only on appellant's view that appellee failed to provide the promised contacts and "fabricated" the list provided. (Appellant's Brief at 38.) While appellant is unhappy with the contacts list provided to him, we do not find the parties' agreement ambiguous or uncertain as to that term. Therefore, considering all the above, we find appellant has failed to demonstrate the trial court erred in finding appellee did not breach the settlement agreement and in dismissing the case.

{¶ 24} Accordingly, we overrule appellant's first assignment of error.

### 2. Second assignment of error—due process rights

{¶ 25} Appellant contends his due process rights were violated in this action by virtue of the trial court failing to provide him notice of the (evidentiary) nature of the July 8, 2020 hearing and by the trial court ruling on the issue of compliance as a matter of law or

by failing to recuse himself.   For the following reasons, we find appellant has not demonstrated prejudicial error.

{¶ 26} At a minimum, "[d]ue process under the Ohio and United States Constitutions demands that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner where the state seeks to infringe a protected liberty or property interest." *State v. Hochhausler*, 76 Ohio St.3d 455, 459 (1996).   "However, the concept of due process is flexible and varies depending on the importance attached to the interest and the particular circumstances under which the deprivation may occur." *Id.*   An appellate court reviews an assertion of a due process violation de novo.  *Seman v. State Med. Bd. of Ohio*, 10th Dist. No. 19AP-613, 2020-Ohio-3342, ¶ 20, citing *Flynn v. State Med. Bd. of Ohio*, 10th Dist. No. 16AP-29, 2016-Ohio-5903, ¶ 46.

{¶ 27} In general, where a party does not have proper notice of an evidentiary hearing, a trial court violates a party's right to due process in denying the party's request for a reasonable continuance.  *Bradley v. Niro*, 9th Dist. No. 27475, 2015-Ohio-1921, ¶ 20 (holding a trial court violated a party's due process rights where the local rules applicable in that case called for a non-evidentiary hearing, the prior judgment lacked specificity as to what type of hearing would occur on remand, the party's attorney moved for a continuance to better prepare, the record showed the continuance would not be a significant inconvenience to the court, and the court denied the continuance). However, in such a situation, "[w]here a party fails [to] ask for a continuance, a trial court may properly conclude that the defendant is prepared to proceed." *State v. Hirtzinger*, 124 Ohio App.3d 40, 48 (2d Dist.1997), citing *State v. Edwards*, 49 Ohio St.2d 31, 43 (1976).

{¶ 28} The instant case can be distinguished from the due process violation holding in *Bradley* in two ways.  First, appellant failed to provide a transcript of the July 8, 2020 hearing.  As previously stated, pursuant to App.R. 9(B)(1), an appellant is obligated to ensure this court has a transcription of the proceedings, regardless of how those proceedings were recorded in the trial court.  App.R. 9(B)(1); *A.R.C.* at ¶ 14.  Without a transcript, we assume the magistrate's decision is accurate in stating that each party "was afforded a recognized right to an evidentiary hearing pertaining to [appellee's] motion, which include[d] an opportunity to call witnesses, cross examine opposing witnesses, and

offer oral agreement." (Sept. 23, 2020 Mag.'s Decision at 18.)   This court has no way to discern whether appellant objected to the evidentiary hearing before the magistrate, attempted to call the trial court judge as a witness or any other witnesses, otherwise raised these issues or was denied presentation of evidence.  As it stands, appellant could have agreed to move forward with the evidentiary hearing and limit his evidence to his own testimony.  "Absent a transcript, this court must presume the regularity of the proceedings below and affirm the trial court's decision." *Lee* at ¶ 10; *Knapp* at 199.

{¶ 29} Second, unlike *Bradley*, the record does not reflect, and appellant does not assert, that appellant asked for a continuance to adequately prepare for the hearing. Without appellant asking for and being denied a continuance, we are not convinced the trial court erred in proceeding with the evidentiary hearing on the disputed settlement agreement term.  *See also Rulli v. Fan Co.*, 79 Ohio St.3d 374, 374 (1997) ("Where the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment.").

{¶ 30} Moreover, as recognized by *Bradley*, a due process violation in holding an evidentiary hearing does not force reversal on appeal where the party does not show prejudice.  *See Bradley* at ¶ 28 (finding due process violation harmless where the outcome of the hearing could have been ordered solely on the basis of the party's motion and the party otherwise failed to show what harm she suffered as a result of the trial court's error).

{¶ 31} Similarly, in this case, appellant has not demonstrated prejudice from the evidentiary hearing being held on July 8, 2020.  He asserts he would have called witnesses, "including the trial judge and counsel for the appellee" to testify as to the settlement conference and settlement agreement reached by the parties. (Appellant's Brief at 47.) But, as previously found, the terms of the settlement agreement can be ascertained from the plain language of the agreement as memorialized and agreed to at the September 5, 2019 hearing.  The trial court judge already expressed his understanding of the terms of the agreement, stated those on the record, and the parties agreed with that understanding without qualification.  In other words, because the language of the settlement agreement is clear and unambiguous, there is no need to resort to witness testimony to resolve an

ambiguity. Considering all of the above, we find appellant has not demonstrated prejudice flowing from the July 8, 2020 evidentiary hearing before the magistrate.

{¶ 32} Finally, appellant has not demonstrated his due process rights were violated by the trial court judge determining the issue of compliance as a matter of law or by failing to recuse himself. As discussed previously, the issues raised by appellant concerning the settlement agreement were resolvable as a matter of law based on the plain language of the agreement. No matter remained to be submitted to a jury. Furthermore, while appellant now contends that the trial court judge should have recused himself, he neither provides legal authority to support this position nor an explanation for why he did not raise this issue until after the trial court issued its adverse decision.

{¶ 33} "A judge will not be disqualified based solely on the fact that he or she participated in settlement discussions." *In re Disqualification of Forchione*, 134 Ohio St.3d 1235, 2012-Ohio-6303, ¶ 21. "In addition, an attorney cannot acquiesce in a judge's participation in settlement negotiations and later try to have that judge disqualified because counsel did not like the judge's proposed settlement." *Id.*, citing *In re Disqualification of Nadel*, 74 Ohio St.3d 1214 (1989), quoting Annotation, *Waiver or Loss of Right to Disqualify Judge by Participation in Proceedings—Modern State Criminal Cases*, 27 A.L.R.4th 597, 605 (1984) (" '[A] party should not be permitted to participate in an action or proceedings to the extent that he is able to ascertain the attitude of the judge toward important aspects of his case and then avoid an adverse ruling by belatedly raising the issue of disqualification.' "). *In re Disqualification of Spon*, 134 Ohio St.3d 1254, 2012-Ohio-6345, ¶ 18 (noting that "while affiants claim that no one had requested [the trial court judge's] assistance in resolving the * * * action, nothing in this record suggests that affiants ever objected to the judge's participation in the settlement process").

{¶ 34} These cases disfavor a party acquiescing to a judge's involvement in a case and then later attempting to avoid an adverse ruling by calling the judge's involvement a foul. Here, appellant does not contend, and the record does not reflect, that appellant requested the trial court judge recuse himself from considering the objections to the magistrate's decision. After the hearing before the magistrate, appellant specifically submitted his objections to the trial court judge for review and submitted various other motions and notices to the trial court judge's attention. The record shows appellant

appeared content with the trial court's continued authority in the matter, at least until appellant received the trial court's decision adopting the magistrate's decision in favor of appellee and thereafter pursued this appeal.

{¶ 35} Moreover, appellant has not provided legal authority pertaining to judge recusal at all, let alone authority specific to the case here—for example, pertaining to a settlement agreement that was clearly reached in the first instance and the trial court's referral of a later disputed term to a magistrate for an evidentiary hearing—that could persuade us reversal is necessary. As such, appellant has not met his burden in demonstrating error on appeal in this regard. App.R. 16(A)(7); *State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (stating general rule that an appellant bears the burden of affirmatively demonstrating error on appeal); *State v. Smith*, 9th Dist. No. 15AP0001n, 2017-Ohio-359,¶ 22; *McKahan v. CSX Transp., Inc.*, 10th Dist. No. 09AP-376, 2009-Ohio-5359, ¶ 10; *J.W. v. D.W.*, 10th Dist. No. 19AP-52, 2019-Ohio-4018, ¶ 55 (noting that it is not the duty of an appellate court to create an argument on an appellant's behalf). Therefore, considering the above, appellant has not demonstrated his due process rights were violated.

{¶ 36} Accordingly, appellant's second assignment of error is overruled.

## IV. CONCLUSION

{¶ 37} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER, P.J., and DORRIAN, J., concur.

_____