[Cite as *Shalash v. Shalash*, 2023-Ohio-3030.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Majida Shalash, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 22AP-691 |
| v. | : | (C.P.C. No. 13DR-2258) |
| Nabeel Shalash, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 29, 2023

**On brief:** *Alana L. Van Gundy*, for appellant.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

EDELSTEIN, J.

{¶ 1} Defendant-appellant, Nabeel Shalash, appeals from the October 13, 2022 judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, overruling his objections to the magistrate's decision following a contempt hearing, finding him in contempt for failure to pay spousal support, and ordering him to serve a 30-day jail sentence. For the following reasons, we affirm.

**I. FACTS AND PROCEDURAL OVERVIEW**

{¶ 2} On January 8, 2015, the trial court entered a final judgment and decree of dissolution, ending the almost 24-year marriage between Mr. Shalash and plaintiff-appellee, Majida Shalash. The parties' separation agreement was expressly incorporated into that divorce decree. (*See* Jan. 8, 2015 Jgmt. Entry and Dissolution Decree at 3.) It provided, among other things, that Mr. Shalash would pay his former wife monthly spousal support of $1,000 until January 8, 2023. (*See* Jan. 8, 2015 Separation Agreement at 10.) The parties agreed, however, that spousal support was "inappropriate until such time as the

marital residence" on Morningdew Drive was sold and Mr. Shalash was "no longer contributing directly toward[s] the living expenses of" Ms. Shalash. (*See* Separation Agreement at 10.)

{¶ 3} Among other things, "living expenses" included the monthly mortgage payments for the Morningdew Drive residence until the time provided by the separation agreement. (*See* Separation Agreement at 10.) At all relevant times, Ms. Shalash was entitled to occupy the Morningdew Drive home. (*See* Separation Agreement at 6.)

{¶ 4} In 2021, Ms. Shalash filed motions for contempt against Mr. Shalash for nonpayment of spousal support after the Morningdew Drive house was sold in October 2018. (*See* Mar. 17, 2022 Hearing Tr. at 41.) The trial court referred the matter to a magistrate for a contempt hearing, which was held on March 17, 2022.[1]

{¶ 5} At the contempt hearing, it was undisputed that Mr. Shalash stopped making the monthly mortgage payments for the Morningdew Drive residence in early 2018 (*see, e.g.*, Tr. at 12-13; Hearing Ex. 1[2] at ¶ 3) even though his obligation to make such payments remained in effect at that time (*see* Separation Agreement at 6, 10). Further, Mr. Shalash admitted he did not receive permission from anyone—namely, the trial court—to stop making the mortgage payments. (Tr. at 13.)

{¶ 6} The mortgage company initiated a foreclosure action against the Morningdew Drive residence in July 2018 (Hearing Ex. 1), and the property was sold on October 11, 2018 (*see* Hearing Ex. 3; Tr. at 18, 25, 40-41). Pursuant to the separation agreement, Mr. Shalash's obligation to make monthly spousal support payments to Ms. Shalash thus commenced in October 2018. (*See* Separation Agreement at 10.) Mr. Shalash did not contend otherwise at the March 2022 contempt hearing (*see* Tr. at 93-97) and concedes this point on appeal (*see* Brief of Appellant at 6).

---

[1] In May 2021, Mr. Shalash moved to dismiss Ms. Shalash's February 2021 contempt motion on the grounds that it failed to sufficiently describe the factual basis for the contempt allegations levied against him. At the March 17, 2022 hearing, Mr. Shalash's counsel also orally moved to dismiss the November 2021 amended contempt motion on the grounds that a new summons and order to appear were not issued with the amended motions. The magistrate denied both motions to dismiss. (July 14, 2022 Mag.'s Decision at 2-3.) Mr. Shalash did not object to those rulings in the trial court and does not challenge them now on appeal.

[2] At the March 17, 2022 hearing, Ms. Shalash's exhibits were numbered while Mr. Shalash's exhibits were designated with letters.

**{¶ 7}** At the March 2022 hearing, Mr. Shalash admitted he was aware of the separation agreement and its mandates, including the spousal support provision. (*See* Tr. at 12-13, 18-21.) He also acknowledged that he did not make any spousal support payments to Ms. Shalash after the Morningdew Drive residence was sold in October 2018. (*See* Tr. at 13-14, 21, 89-90.) And, Mr. Shalash did not dispute that, at the time of the hearing, he owed Ms. Shalash over $40,000 in spousal support under the terms of the separation agreement. (*See* Tr. at 93-97.) Instead, he argued he should not be held in contempt of that order because evidence and testimony presented at the March 2022 hearing supported an inability-to-pay defense. (*See* Tr. at 94-97.) He makes a similar argument now on appeal.

**{¶ 8}** At the March 2022 hearing, Mr. Shalash testified that from 2018 up until March 7, 2022, he worked 30-35 hours per week as a cashier at Three Star Market, earning between $9 and $10 per hour. (*See* Tr. at 14-15, 58-63.) Mr. Shalash also produced copies of his 2018, 2019, 2020, and 2021 tax records, which showed an adjusted gross income of $14,400 in 2018 and 2019 (Hearing Ex. B; Hearing Ex. C), an adjusted gross income of $13,200 in 2020 (Hearing Ex. D), and an adjusted gross income of $17,400 in 2021 (Hearing Ex. E). Mr. Shalash described his living expenses and the expenses associated with his household—which included his new wife, his two children (not shared with Ms. Shalash), and a stepdaughter. (*See* Tr. at 65-79.) He also testified about being recently unemployed (*see* Tr. at 14, 95), and he described difficulty in obtaining gainful employment because of his prior felony convictions (*see* Tr. at 73-74, 79-82).

**{¶ 9}** Relying exclusively on these tax records and his own testimony, Mr. Shalash posited that he was unable to pay the spousal support owed to Ms. Shalash and should not be held in contempt of court on account of his impoverishment. (*See, e.g.*, Tr. at 94-97.)

**{¶ 10}** Mr. Shalash's tax records also showed, however, that Mr. Shalash received $33,955 in tax refunds between 2018 to 2021. (*See* Tr. at 82-89; Hearing Ex. B; Hearing Ex. C; Hearing Ex. D; Hearing Ex. E.) And, contrary to his testimony describing his occupation as a "cashier" for all four years, the tax records he produced showed Mr. Shalash's listed occupation was "manager." (*Compare* Tr. at 14-15, 62-63, 84, *with* Tr. at 84-90.) Moreover, we note that Mr. Shalash's felony convictions had already been entered at the time he assented to the terms of the separation agreement, which included his monthly spousal support obligation of $1,000 that he now claims he is unable to pay. (*See*

Tr. at 73-74, 79-82.) That is to say, his felony convictions provided the same barrier in 2014/2015—when he signed the separation agreement and the trial court entered the dissolution decree—as he contends they present today. And, of note, Mr. Shalash presented no evidence of additional criminal charges or convictions after the dissolution decree was entered.

{¶ 11} On July 14, 2022, the magistrate issued her decision granting Ms. Shalash's contempt motion. Specifically, the magistrate found that Mr. Shalash's obligation to pay spousal support commenced on October 11, 2018, when the Morningdew Drive residence was sold. (July 14, 2022 Mag.'s Decision at 6.) Using the date on which Ms. Shalash's amended motion for contempt was filed—November 10, 2021—as the end date for her spousal support arrearages calculation, the magistrate found that Mr. Shalash owed Ms. Shalash $44,000 in spousal support (44 months x $1,000 per month). (Mag.'s Decision at 6.) The magistrate reduced that amount, however, by $3,233.15 because Ms. Shalash received the full proceeds from the sale of the Morningdew Drive residence even though the separation agreement entitled Ms. Shalash to receive only 40 percent of those proceeds.[3] (*See* Mag.'s Decision at 6; Separation Agreement at 6.)

{¶ 12} Thus, the magistrate found Mr. Shalash's spousal support arrearage to be $40,766.85 as of November 10, 2021.[4] (Mag.'s Decision at 6, 8.)

{¶ 13} In addressing Mr. Shalash's inability-to-pay defense, the magistrate noted that Mr. Shalash never "made any good faith attempts to modify or satisfy his legal obligations[,]"[5] but instead chose to ignore them. (Mag.'s Decision at 7.) Ultimately, the magistrate found that Mr. Shalash failed to meet his burden of proving his inability to pay the court-ordered spousal support. (Mag.'s Decision at 6-7.)

{¶ 14} Based on these determinations, the magistrate found Mr. Shalash in contempt of court for failing to pay spousal support as ordered in the divorce decree and

---

[3] Ms. Shalash testified the proceeds from the sale were $5,388.59 and acknowledged she had received, by authorization of the parties, this entire amount. (Tr. at 40-41.)

[4] The magistrate noted that "this figure [did] NOT include the $1,000 owed for the entire month of November 2021." (Emphasis sic.) (Mag's Decision at 8.)

[5] We note that Mr. Shalash filed a motion to modify child support in March 2017 and October 2017, but never sought modification of his spousal support obligation or his obligation to make the monthly mortgage payments for the Morningdew Drive residence under the terms of the separation agreement.

sentenced him to 30 days in jail with the opportunity to purge the contempt finding "by immediately commencing payment of his monthly $1,000 spousal support obligation and, starting January 8, 2023, continuing to pay the $1,000 per month until the entire obligation is satisfied." (Mag.'s Decision at 8.) Mr. Shalash was also ordered to pay $2,000 in attorney fees to Ms. Shalash by October 12, 2022 and court costs. (Mag.'s Decision at 8.)

{¶ 15} Mr. Shalash timely objected to the magistrate's decision, specifically challenging the magistrate's ruling on his inability-to-pay defense and the award of attorney fees. (*See* July 26, 2022 Objs. to Mag.'s Decision.) In his objections, Mr. Shalash endorsed the magistrate's findings that his obligation to pay spousal support commenced in October 2018 and that he never made any spousal support payments to Ms. Shalash. (*See id*. at 3.) Mr. Shalash did not object to the magistrate's spousal support arrearages calculation either. Instead, he argued the magistrate erred in rejecting his inability-to-pay defense, relying exclusively on his 2018-2021 tax records as support for that claim. (*See id*. at 3-6.) As required by Civ.R. 53(D)(3)(b)(iii), a transcript of the March 17, 2022 hearing before the magistrate was filed on August 12, 2022.

{¶ 16} Before ruling on Mr. Shalash's objections, the trial court held a second hearing in October 2022. (*See* Aug. 12, 2022 Notice of Hearing; Oct. 3, 2022 Pre-Hearing Brief; Brief of Appellant at 6.) We note, however, that a transcript of the October 2022 proceeding has not been made part of the record before us on appeal.

{¶ 17} On October 13, 2022, the trial court issued a judgment entry denying Mr. Shalash's objections to the magistrate's decision. It is clear the trial court's ruling relied on testimony and evidence presented at the October 2022 hearing. In that decision, the trial court refers to testimony and evidence related to Mr. Shalash's inability-to-pay defense that is not contained in the transcript from the March 2022 hearing. (*See, e.g.*, Oct. 13, 2022 Decision and Entry at 2-3.) For instance, the trial court describes testimony and evidence about Mr. Shalash and his family enjoying a 32-day vacation at a Jordanian resort in *June 2022*. (*Id*. at 3.) The trial court also recounts Mr. Shalash testifying about obtaining new employment in *April 2022*. (*Id*. at 3.) Additionally, the trial court describes Ms. Shalash's testimony about her health issues, inability to work, and reasons for believing Mr. Shalash's claims of poverty and inability to pay are without merit. (*See id*. at 2-3.) We note that such testimony is not reflected in the March 2022 hearing transcript. Furthermore, Mr.

Shalash's testimony about receiving financial assistance from his current wife's family, his trip to Jordan, and denying ownership interest in Three Star Market—all of which the trial court references in its decision—is also not contained in the March 2022 hearing transcript.

{¶ 18} Finding Ms. Shalash to be credible and Mr. Shalash "not [to be] particularly credible," and noting that "[t]ax returns alone[] are not proof of an individual's true income or access to money[,]" the trial court found that Mr. Shalash failed to prove his inability-to-pay defense. (Decision and Entry at 1, 4.) Accordingly, the trial court denied and dismissed Mr. Shalash's objections, found Mr. Shalash to be in contempt of court, and adopted the magistrate's July 14, 2022 decision. (*See id*. at 4. *See also* July 14, 2022 Mag.'s Decision-Adopted Jgmt. Entry (noting the trial court's adoption of the magistrate's July 14, 2022 decision on the docket in the case below).)

{¶ 19} Mr. Shalash timely appealed from the trial court's October 13, 2022 judgment and asserts a sole assignment of error for our review:

> THE TRIAL COURT ABUSED ITS DISCRETION WHEN ORDERING [MR. SHALASH] IN CONTEMPT AND OVERRULING HIS DEFENSE THAT THE PAYMENT OF THE AMOUNT OF SUPPORT IN ADDITION TO ATTORNEY FEES WAS IMPOSSIBLE.

## II. ANALYSIS

{¶ 20} Mr. Shalash contends the trial court abused its discretion by overruling his inability-to-pay defense and finding him in contempt of court for failure to pay spousal support to Ms. Shalash. We disagree.

### A. Applicable Law and Standard of Review

{¶ 21} Contempt of court "results when a party before a court disregards or disobeys an order or command of judicial authority," or otherwise acts in a way that "substantially disrupt[s] the judicial process in a particular case." (Citations omitted.) *Byron v. Byron*, 10th Dist. No. 03AP-819, 2004-Ohio-2143, ¶ 11. Failure to pay court-ordered spousal support is classified as a civil contempt. *See, e.g.*, *Pugh v. Pugh*, 15 Ohio St.3d 136, 139-40 (1984). The party initiating the contempt proceedings must demonstrate, by clear and convincing evidence, that the contemnor has failed to pay support. *Id*. at 139. "A prima facie case of contempt is established when the order is before the court along with proof of

the contemnor's failure to comply with it." *DeMarco v. DeMarco*, 10th Dist. No. 09AP-405, 2010-Ohio-445, ¶ 25, citing *Dzina v. Dzina*, 8th Dist. No. 83148, 2004-Ohio-4497.

{¶ 22} Here, there is no dispute that Ms. Shalash established a prima facie case of contempt by showing Mr. Shalash failed to comply with the spousal support obligation of the court's dissolution decree. Indeed, throughout the March 2022 hearing and in his trial court pleadings, Mr. Shalash routinely conceded that he failed to comply with his spousal support obligations and acknowledged making no spousal support payments to Ms. Shalash.[6] On appeal, he agrees he was obligated to begin paying spousal support to Ms. Shalash in October 2018. (Brief of Appellant at 6.) But, Mr. Shalash contends the trial court abused its discretion in rejecting his inability-to-pay defense against his contempt charge and awarding attorney fees to Ms. Shalash.

{¶ 23} "[G]enerally, impossibility of performance is a valid defense against a contempt charge." (Citations omitted.) *Ruben v. Ruben*, 10th Dist. No. 12AP-717, 2013-Ohio-3924, ¶ 12. The contemnor bears the burden of proving his inability to pay the court-ordered spousal support by a preponderance of the evidence. *See, e.g.*, *id.*; *Rife v. Rife*, 10th Dist. No. 11AP-427, 2012-Ohio-949, ¶ 10; *Pugh* at 140.

{¶ 24} For purposes of defending against a contempt charge, " '[a] party must take all reasonable steps within [his or] her power to comply with the court's order and, when raising the defense of impossibility, must show "categorically and in detail" why [he or] she is unable to comply with the court's order.' " *Robinson v. Rummelhoff*, 10th Dist. No. 13AP-410, 2014-Ohio-1461, ¶ 35, quoting *Briggs v. Moelich*, 8th Dist. No. 97001, 2012-Ohio-1049, ¶ 15, citing *Lahoud v. Tri-Monex, Inc.*, 8th Dist. No. 96118, 2011-Ohio-4120, ¶ 54. "Unsubstantiated claims of financial difficulties do not establish an impossibility defense to a contempt charge." *Palnik v. Crane*, 8th Dist. No. 107400, 2019-Ohio-3364, ¶ 55, citing *Wagshul v. Wagshul*, 2d Dist. No. 23564, 2010-Ohio-3120, ¶ 41, citing *Bishop v. Bishop*, 5th Dist. No. 2001CA00319, 2002-Ohio-1861. We have recognized that when assessing a contemnor's defense of an alleged inability to pay, the trial court is in the best position to evaluate the credibility of the alleged contemnor. *See, e.g.*, *Wehrle v. Wehrle*, 10th Dist.

---

[6] Mr. Shalash claims in his merit brief that he has "attempted to send funds" to Ms. Shalash, "but the funds have been returned." (Brief of Appellant at 9.) That claim is not reflected in the record before us, and we will thus not consider it for purposes of this appeal.

No. 12AP-386, 2013-Ohio-81, ¶ 45. Accordingly, we will not substitute our judgment for that of the trial court in such a situation. *See id.*

{¶ 25} We review a finding of contempt for an abuse of discretion. *See, e.g., Ruben* at ¶ 12, citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10 (1981). Thus, we will not reverse a trial court's finding of contempt—which includes, in relevant part, a trial court's finding the contemnor failed to prove an inability-to-pay defense by a preponderance of the evidence—unless we conclude the trial court's decision was unreasonable, arbitrary, or unconscionable. *See, e.g., id.; Palnik* at ¶ 53. "A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, ¶ 19. An abuse of discretion may also be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶ 15 (8th Dist.). *See also New Asian Super Mkt. v. Jiahe Weng*, 10th Dist. No. 17AP-207, 2018-Ohio-1248, ¶ 16.

### B. Evaluation of Mr. Shalash's Sole Assignment of Error

{¶ 26} On appeal, Mr. Shalash contends that he demonstrated an inability to comply with his spousal support obligations in the trial court because he submitted tax records showing he does not have the financial ability to comply with the court's order and simultaneously support himself, his current wife, their children, and his stepdaughter. (*See* Brief of Appellant at 8-11.) Relying exclusively on his tax records as evidentiary support for his inability-to-pay defense and referencing state and federal poverty guidelines, Mr. Shalash posits that "[h]e falls far below the poverty line, and no evidence was presented that refutes this finding." (Brief of Appellant at 8-11.) Although his tax records were produced at the March 2022 hearing before the magistrate, we note that no evidence or testimony about poverty guidelines were presented by Mr. Shalash's counsel at that hearing. Rather, the record indicates Mr. Shalash's poverty guideline arguments were presented at the October 2022 hearing before the trial court, the transcript of which is not contained in the record before us. (*See* Oct. 3, 2022 Pre-Hearing Brief at 2-3.)

{¶ 27} Presuming that his tax records, in conjunction with the poverty guidelines he cites, are proof of his inability to pay the spousal support he owes to Ms. Shalash, Mr.

Shalash next argues that Ms. Shalash failed to present any evidence to rebut his inability-to-pay defense. (*See* Brief of Appellant at 6, 11-12.) In support of that contention, Mr. Shalash posits that Ms. Shalash "has simply conjectured mere speculation that he is hiding money from her, that he has income over what is reported on his taxes, and that he is funneling money out of the country." (Brief of Appellant at 11.) For these reasons, he claims the trial court abused its discretion in rejecting his inability-to-pay defense, denying his objections to the magistrate's decision, and holding him in contempt of court. (*See* Brief of Appellant at 4, 12.)

{¶ 28} Even assuming Ms. Shalash's statements regarding Mr. Shalash's financial solvency were purely speculative—as Mr. Shalash contends—the substance of the testimony Mr. Shalash takes issue with on appeal is not reflected in the March 2022 hearing transcript. Instead, that testimony appears to have been elicited at the October 2022 hearing before the trial court, as it is described in the trial court's October 13, 2022 decision from which Mr. Shalash now appeals. Again, the transcript from the October 2022 hearing is not in the record before us. It follows, then, that we cannot properly review Mr. Shalash's contention that Ms. Shalash failed to sufficiently rebut his inability-to-pay defense. Nor can we properly evaluate the propriety of the trial court's decision to reject his defense based on the evidence and testimony presented at the October 2022 hearing because the transcript of that hearing is not in the record before us in this case.

{¶ 29} "[A] bedrock principle of appellate practice in Ohio is that an appeals court is limited to the record of the proceedings at trial." *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, ¶ 13. Indeed, App.R. 9 requires an appellant to submit to the appellate court a transcript of the trial court proceedings the appellant deems necessary for the appellate court's review. App.R. 9(B). *See also Elhag v. Babiker*, 10th Dist. No. 19AP-117, 2019-Ohio-3912, ¶ 7. However, if no transcript is available, App.R. 9(C) and (D) provide alternatives for the appellant. *See id.*

{¶ 30} Here, nothing in the record indicates that a transcript of the October 2022 hearing would not have been available to Mr. Shalash had he requested it. In fact, nothing in the record suggests a transcript for that hearing was ever requested. If a transcript was not available for the October 2022 hearing, then Mr. Shalash had a duty to either prepare

and file a statement of the evidence under App.R. 9(C) or to obtain and submit an agreed statement under App.R. 9(D). *See* App.R. 9(B)(4). But, Mr. Shalash did neither.

{¶ 31} In the absence of a complete transcript of the proceedings, a statement of the evidence pursuant to App.R. 9(C), or an agreed statement pursuant to App.R. 9(D), an appellate court has no alternative but to indulge the presumption of the regularity of the proceedings and the validity of the judgment in the trial court. *See, e.g.*, *Ostrander v. Parker-Fallis Insulation Co., Inc.*, 29 Ohio St.2d 72, 74 (1972). Furthermore, "[w]hen portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980).

{¶ 32} Although the March 2022 hearing transcript and exhibits were filed, Mr. Shalash's arguments on appeal pertain to the testimony and exhibits presented at the October 2022 hearing. (*See* Brief of Appellant at 6, 11.) Specifically, Mr. Shalash contends the trial court erred in relying on Ms. Shalash's October 2022 testimony about Mr. Shalash's financial solvency—which he describes as being purely speculative—to reject his inability-to-pay defense. (*See* Brief of Appellant at 6, 11.) Because the appellate record does not include a transcript of the October 2022 proceedings before the trial court, or an acceptable alternative under App.R. 9(C) or (D), we must presume the regularity of the trial court's ruling on this issue and affirm its October 13, 2022 judgment. For these reasons, we overrule Mr. Shalash's sole assignment of error. *See, e.g.*, *J. Griffin Ricker Assocs., LLC v. Well*, 10th Dist. No. 21AP-29, 2022-Ohio-1470, ¶ 17-18 (noting that "the lack of the transcript independently support[ed] overruling" appellant's assignment of error).

## III. CONCLUSION

{¶ 33} Having overruled Mr. Shalash's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

LUPER SCHUSTER and MENTEL, JJ., concur.